King Brett **LAUTER**, Plaintiff,

v.

Irina **ANOUFRIEVA**, et al., Defendants.

Case No. CV 07–6811 JVS(JC).

United States District Court, C.D. California, Western Division.

July 14, 2009.

King Brett Lauter, Santa Monica, CA, pro se.

Irina Anoufrieva, San Francisco, CA, pro se.

Lee I. Petersil, Morris Polich & Purdy, Los Angeles, CA, Marc J. Schneider, Stradling Yocca Carlson & Rauth, Newport Beach, CA, Armen E. Gekchyan, Law Offices of Armen E. Gekchyan, Glendale, CA, for Defendants.

ORDER ADOPTING FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE

[RE DKT. NOS. 75, 77, 78, 84, 109]

JAMES V. SELNA, District Judge.

Pursuant to 28 U.S.C. § 636, the Court has reviewed the First Amended Complaint, all documents filed in connection with the pending motions to dismiss, motion to strike, and motions for summary judgment, and all of the records herein, including the attached Report and Recommendation of United States Magistrate Judge ("Report and Recommendation"), the parties' objections thereto, and the parties' responses to the objections.[1] The

---

1. The five specific motions in issue are: (1) the Motion to Dismiss the First Amended Complaint ("Motion to Dismiss") filed by defendants Lauren Liebert ("Liebert"), Jonathan

Court has further made a *de novo* determination of those portions of the Report and Recommendation to which objection is made. The Court concurs with and adopts the Report and Recommendation with the

following modifications: (1) Claim Ten is dismissed with leave to amend; and (2) Footnote 30, at page 23 is deleted.[2]

IT IS HEREBY ORDERED: (1) the Motion to Dismiss is granted in part and denied in part;[3] (2) the Anoufrieva Motion

C.S. Cox ("Cox"), Debra Cox, as representative of the estate of Jonathan C.S. Cox ("Cox Estate") and Cox Padmore Skolnik & Shakarchy LLP ("Cox Firm") (collectively the "Liebert/Cox Defendants") in which defendants Tere Lynn Guerrero ("Guerrero") and Ellen Bodisco Miller ("Miller") have joined; (2) a Motion to Dismiss filed by defendant Irina Anoufrieva ("Anoufrieva Motion"); (3) a Special Motion to Strike Portions of the First Amended Complaint on Slapp Suit Grounds (the "Anti–SLAPP Motion") filed by the Liebert/Cox Defendants in which defendants Guerrero and Miller have joined; (4) Plaintiff's Motion for Summary Judgment Against Defendant Guerrero ("Plaintiff's Guerrero Motion"); and (5) Plaintiff's Motion for Summary Judgment Against Defendant Anoufrieva ("Plaintiff's Anoufrieva Motion"). (Plaintiff's Guerrero Motion and Plaintiff's Anoufrieva Motion will collectively be referred to as "Plaintiff's Summary Judgment Motions").

**2.** To the extent plaintiff objects to the Report and Recommendation because it does not resolve plaintiff's request, pursuant to Fed. R.Civ.P. 56(d), to adjudicate certain facts which plaintiff represents to be undisputed, the objection is overruled as the pleadings in this matter remain unsettled, and as it would not serve judicial economy for the Court to adjudicate such issues at this juncture in the litigation. Subject to any further case management and scheduling orders, nothing in this Order prohibits plaintiff from seeking summary adjudication of facts (or summary judgment), after the pleadings are closed. To the extent plaintiff, in his objections, requests clarification regarding the addition of defendants and/or the substitution of Doe defendants, such matters should be raised, in the first instance, through a motion to the Magistrate Judge. (The Court notes that since the filing of his objections, plaintiff has filed such a motion with the Magistrate Judge who issued a ruling thereon on June 22, 2009.)

**3.** Specifically: (1) the Motion to Dismiss is granted as follows: (a) claim one (RICO) is dismissed with leave to amend; (2) claim two (Section 1983) is dismissed with leave to amend; (3) claim three (Section 1985) is dis-

missed with leave to amend; (4) claim four (filing false police report) is dismissed without leave to amend; (5) claim five (false imprisonment) is dismissed without leave to amend; (6) the portion of claim six (malicious prosecution) which is predicated upon the Domestic Violence Action is dismissed without leave to amend; (7) claim seven (California Constitutional right to privacy) is dismissed without leave to amend as to defendants Cox and the Cox Estate *only;* (8) claim eight (invasion of privacy) is dismissed as to defendants Cox and the Cox Estate *only;* (9) claim nine (intentional infliction of emotional distress) is dismissed as against defendants Cox and the Cox Estate *only, except* to the extent predicated on the alleged malicious prosecution of plaintiff on the criminal complaint arising from the Menlo Park Police investigation; (10) claim ten (negligence) is dismissed with leave to amend; (11) claim eleven (prima facie tort) *is dismissed without* leave to amend; (12) claim twelve (Business & Professions Code § 6452(b)) is dismissed without leave to amend; (13) claim thirteen (Business & Professions Code § 17200) is dismissed without leave to amend as to defendants Cox and the Cox Estate *only, except* to the extent predicated on the alleged malicious prosecution of plaintiff on the criminal complaint arising from the Menlo Park Police investigation and the alleged communications between plaintiff and the Cox Estate representatives in June 2007; and (14) claim fourteen (civil conspiracy) is dismissed without leave to amend as an enumerated count; and (2) the Motion to Dismiss is denied without prejudice to the extent it seeks dismissal of (a) the portion of claim six (malicious prosecution) which is predicated upon the criminal complaint resulting from the Menlo Park Police investigation; (b) claim seven (California Constitutional right to privacy), except as to defendants Cox and the Cox Estate; (c) claim eight (invasion of privacy), except as to defendants Cox and the Cox Estate; (d) claim nine (intentional infliction of emotional distress), except to the extent it is against defendant Cox and the Cox Estate *and* is predicated on the alleged malicious prosecution of plaintiff on the crim-

is denied; (3) the Anti–SLAPP Motion is denied without prejudice; (4) Plaintiff's Summary Judgment Motions are denied; (5) to the extent plaintiff elects to amend those portions of the First Amended Complaint as to which leave to amend has been granted, plaintiff must file any Second Amended Complaint within twenty (20) days of the entry of this Order;[4] and (6) plaintiff is advised that the failure timely to file a Second Amended Complaint will result in this action proceeding solely on the remaining portions of the First Amended Complaint absent further order of the court.

IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Report and Recommendation on plaintiff and on defendants' counsel.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION OF UNITED STATE MAGISTRATE JUDGE

inal complaint arising from the Menlo Park Police investigation; and (e) claim thirteen (Business & Professions Code § 17200), except to the extent it is against defendant Cox and the Cox Estate *and* is predicated on the alleged malicious prosecution of plaintiff on the criminal complaint arising from the Menlo Park Police investigation and the alleged communications between plaintiff and the Cox Estate representatives in June 2007.

4. Any second amended complaint must: (1) be labeled: "Second Amended Complaint;" (2) be complete in and of itself and not refer in any manner to the original Complaint or the First Amended Complaint; (3) contain a "short and plain" statement of the claim(s) for relief except to the extent fraud allegations are involved in which case particularized pleading is appropriate. *See* Fed.R.Civ.P. 8(a), 9(b); (4) make each allegation "simple, concise and direct." Fed.R.Civ.P. 8(d)(1); (5) make allegations in numbered paragraphs, "each limited as far as practicable to a single set of circumstances." Fed.R.Civ.P. 10(b); (6) set forth clearly the sequence of events giving rise to the claim(s) for relief; and (7) not add defendants without leave of court.

[RE DKT. NOS. 75, 77, 78, 84, 109]

JACQUELINE CHOOLJIAN, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable James V. Selna, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05–07 of the United States District Court for the Central District of California.

## I. SUMMARY

On April 3, 2008, plaintiff King Brett Lauter ("plaintiff"), who is at liberty, has paid the filing fee, and is proceeding *pro se*, filed the operative First Amended Complaint ("First Amended Complaint" or "FAC") in this action.[1] The eighty-four page First Amended Complaint purports to raise claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68, claims under federal civil rights statutes, 42 U.S.C. §§ 1983 and 1985(2), and various state law claims.[2] The seven named de-

Notwithstanding, the foregoing plaintiff may invoke the usual procedures for naming Doe defendants.

1. On August 14, 2007, plaintiff lodged his original Complaint (the "Original Complaint") and filed a request to proceed in forma pauperis in Case No. 07–5297. The court denied plaintiff's request to proceed in forma pauperis. On October 22, 2007, plaintiff paid the filing fee and filed the Original Complaint in the instant action.

2. Specifically, plaintiff alleges: (1) violations of 18 U.S.C. §§ 1962(a), (b), (c), and (d) (*i.e.*, RICO provisions) (FAC at 30–38) ("claim one"); (2) violations of 42 U.S.C. § 1983 and conspiracy (FAC at 38–44) ("claim two"); (3) violations of 42 U.S.C. § 1985(2) and conspiracy (FAC at 44–45) ("claim three"); (4) filing of a false police report (FAC at 45–46) ("claim four"); (5) false imprisonment and conspiracy (FAC at 46–48) ("claim five"); (6) malicious prosecution and conspiracy (FAC at 48–52) ("claim six"); (7) violation of state constitutional right of privacy and conspiracy (FAC at 53–56) ("claim seven"); (8) false light invasion of privacy and conspiracy (FAC at 56–59)

fendants are: (1) plaintiff's former wife, Irina Anoufrieva ("Anoufrieva"); (2) former paralegal Lauren Liebert ("Liebert"); (3) former paralegal Tere Lynn Guerrero ("Guerrero"); (4) deceased attorney Jonathan C.S. Cox ("Cox"); (5) Debra Cox as representative of the estate of Jonathan C.S. Cox (the "Cox Estate"); (6) Cox Padmore Skolnik & Shakarchy LLP (the "Cox Firm"); and (7) former paralegal Ellen Bodisco (Miller) ("Miller").[3]

Pending before the court and addressed in this Report and Recommendation are

("claim eight"); (9) intentional infliction of emotional distress and conspiracy (FAC at 59–62) ("claim nine"); (10) negligence (FAC at 62–65) ("claim ten"); (11) prima facie tort and conspiracy (FAC at 65–67) ("claim eleven"); (12) violations of Business & Professions Code § 6452(b) (FAC at 67–69) ("claim twelve"); (13) violations of Business & Professions Code § 17200 (FAC at 69–77) ("claim thirteen"); and (14) civil conspiracy (FAC at 77–79) ("claim fourteen"). Plaintiff seeks injunctive and monetary relief. (FAC at 80–83).

**3.** On May 6, 2008, plaintiff filed a "Notice of Errata Re: First Amended Complaint" ("Errata") indicating that although such pleading reflected that "Ellen Bidisco" was a named defendant, such name was misspelled and should read "Ellen Bodisco." (Errata at 1). This defendant has since appeared in the action under the name "Ellen Miller," indicating that she was erroneously served as Ellen Bodisco. Accordingly, this court uses the correct version of such defendant's name herein. Other than defendant Miller, all defendants named in the First Amended Complaint were also named as defendants in the Original Complaint.

**4.** The Motion to Dismiss was filed on May 5, 2008 and is accompanied by a supporting Memorandum of Points and Authorities. (Docket No. 77). Defendants Guerrero and Miller filed joinders therein on May 5, 2008 and May 20, 2008, respectively. (Docket Nos. 80, 91). Plaintiff filed an Opposition to the Motion to Dismiss/Request for Judicial Notice ("Opposition to Motion to Dismiss") on May 15, 2008. (Docket Nos. 90). On May 28, 2008, plaintiff lodged his deposition transcript for consideration in conjunction with, *inter alia*, the Motion to Dismiss. (Docket No. 99).

five motions: (1) a Motion to Dismiss the First Amended Complaint ("Motion to Dismiss") filed by defendants Liebert, Cox, the Cox Estate and the Cox Firm (collectively the "Liebert/Cox Defendants") in which defendants Guerrero and Miller have joined;[4] (2) a Motion to Dismiss filed by defendant Anoufrieva ("Anoufrieva Motion");[5] (3) a Special Motion to Strike Portions of the First Amended Complaint on Slapp Suit Grounds (the "Anti–SLAPP Motion") filed by the Liebert/Cox Defendants in which defendants Guerrero and Miller have joined;[6] (4)

On May 30, 2008, the Liebert/Cox Defendants and defendant Miller jointly filed a reply and a supporting Declaration of Zach Wadle with exhibits, in which defendant Guerrero joined on June 3, 2008. (Docket Nos. 96, 97, 102). On June 3, 2008, plaintiff filed another "opposition" to, *inter alia*, the Motion to Dismiss and the reply brief filed in conjunction therewith. (Docket No. 105, 106, 118). On June 6, 2008, the Liebert/Cox Defendants and defendant Miller filed a response and objections to plaintiff's "opposition." (Docket No. 107). On June 10, 2008, plaintiff lodged certain discovery responses for consideration in conjunction with, *inter alia*, the Motion to Dismiss. (Docket No. 115).

**5.** Defendant Anoufrieva, who is proceeding *pro se*, filed the Anoufrieva Motion on April 30, 2008. (Docket No. 75). Such document is captioned: "Defendant's [sic] Irina Anoufrieva's Response to Plai[n]tiff First Amended Complaint and Motion to Dismiss the Case." In light of defendant Anoufrieva's *pro se* status, this court liberally construes such pleading to be a motion to dismiss. Plaintiff filed an opposition to the Anoufrieva Motion/Request for Judicial Notice ("Opposition to Anoufrieva Motion") in support thereof on May 6, 2008. (Docket No. 83).

**6.** The Anti–SLAPP Motion was filed on May 5, 2008 and is accompanied by a supporting Memorandum of Points and Authorities. (Docket No. 78). Defendants Guerrero and Miller filed joinders therein on May 5, 2008 and May 20, 2008, respectively. (Docket Nos. 79, 92). Plaintiff filed an Opposition to the Anti–SLAPP Motion/Request for Judicial Notice ("Opposition to Anti–SLAPP Motion")

Plaintiff's Motion for Summary Judgment Against Defendant Guerrero ("Plaintiff's Guerrero Motion"); [7] and (5) Plaintiff's Motion for Summary Judgment Against Defendant Anoufrieva ("Plaintiff's Anoufrieva Motion").[8] (Plaintiff's Guerrero Motion and Plaintiff's Anoufrieva Motion will collectively be referred to as "Plaintiff's Summary Judgment Motions").

Based upon the record and the applicable law, and as further discussed below: (1) the Motion to Dismiss should be granted in part and denied in part; (2) the Anoufrieva Motion should be denied; (3) the Anti–SLAPP Motion should be denied;

and a supporting declaration on May 15, 2008. (Docket Nos. 88, 89). On May 28, 2008, plaintiff lodged his deposition transcript for consideration in conjunction with, *inter alia*, the Anti–SLAPP Motion. (Docket No. 99). On May 30, 2008, the Liebert/Cox Defendants and defendant Miller jointly filed a reply in which defendant Guerrero joined on June 3, 2008. (Docket Nos. 98, 103). On June 3, 2008, plaintiff filed another "opposition" to, *inter alia*, the Anti–SLAPP Motion and the reply brief filed in conjunction therewith. (Docket No. 105, 106, 118). On June 6, 2008, the Liebert/Cox Defendants and defendant Miller filed a response and objections to plaintiff's "opposition." (Docket No. 107). On June 10, 2008, plaintiff lodged certain discovery responses for consideration in conjunction with, *inter alia*, the Anti–SLAPP Motion. (Docket No. 115).

7. Plaintiff's Guerrero Motion was filed on June 6, 2008 and is accompanied by a Request for Judicial Notice, and a Statement of Uncontroverted Facts and Conclusions of Law. (Docket No. 109). On June 10, 2008, plaintiff submitted additional documents in support of Plaintiff's Guerrero Motion consisting of a Declaration of Brett Lauter with exhibits and a Notice of Lodging of Defendant Guerrero's Responses to Plaintiff's First Set of Interrogatories with exhibits. (Docket Nos. 111, 115). On July 3, 2008, defendant Guerrero filed an Opposition to Plaintiff's Guerrero Motion, a supporting declaration of Armen E. Gekchyan, Esq. with exhibits, a Statement of Genuine Issues, and Objections. (Docket Nos. 121–24). On July 18, 2008,

and (4) Plaintiff's Summary Judgment Motions should be denied.

## II. THE FIRST AMENDED COMPLAINT

Plaintiff essentially alleges that defendant Anoufrieva and the other defendants—all of whom were at one time affiliated with the Cox Firm—engaged in a pattern of harassment against plaintiff, pursuant to which they, among other things, falsely reported to various government authorities and courts that plaintiff had physically abused Anoufrieva and had violated a restraining order.

plaintiff filed a Reply, a second Declaration of Brett Lauter with exhibits, and Evidentiary Objections. (Docket Nos. 131–33).

8. Plaintiff's Anoufrieva Motion was filed on May 6, 2008 and is accompanied by a Request for Judicial Notice, and a Statement of Uncontroverted Facts and Conclusions of Law. (Docket No. 84). On June 2, 2008, defendant Anoufrieva submitted an Opposition to Plaintiff's Anoufrieva Motion with accompanying exhibits. (Although such document was date-stamped June 2, 2008 by the Clerk, such document was erroneously not contemporaneously entered on the docket.) On June 10, 2008, plaintiff filed Evidentiary Objections and an Affidavit of Charlotte S.G. Lauter. (Docket Nos. 112, 113). On June 12, 2008, plaintiff filed a Reply and a second Request for Judicial Notice in support of Plaintiff's Anoufrieva Motion. (Docket Nos. 116, 117). On June 13, 2008, plaintiff filed a Declaration of Brett Lauter with exhibits. (Docket No. 119). On October 1, 2008, defendant Anoufrieva filed a supplemental opposition. (Docket No. 140). On October 15, 2008, plaintiff filed Renewed Evidentiary Objections. (Docket No. 142). On December 1, 2008, plaintiff filed another Request for Judicial Notice. (Docket No. 146). In separate but related filings, the Cox/Liebert Defendants and Defendant Miller jointly filed Objections to Plaintiff's Anoufrieva Motion in which defendant Guerrero joined. (Docket Nos. 100, 101). On June 17, 2008, plaintiff filed a reply thereto. (Docket No. 120).

In the First Amended Complaint, plaintiff alleges, among other things, the following: [9]

## A. Background

On March 13, 1999, plaintiff executed and submitted to immigration authorities, a petition in support of obtaining a fiancee visa for defendant Anoufrieva, a Russian citizen. (FAC at 4, 11–12). On July 28, 1999, defendant Anoufrieva entered the United States based upon the fiancee visa. (FAC at 12). On October 26, 1999, plaintiff and defendant Anoufrieva married and lived together in an apartment on the Stanford University campus, where plaintiff was a student. (FAC at 12). On October 27, 1999, plaintiff and defendant Anoufrieva applied for a conditional permanent resident visa for Anoufrieva, based upon her status as plaintiff's wife. (FAC at 12). Defendant Anoufrieva later received the temporary visa. (FAC at 13).

In August 2000, defendant Anoufrieva began to have an affair with another man and became pregnant with the other man's child. (FAC at 12). In the same month, the Cox Firm hired Anoufrieva to work as a paralegal for defendant Cox and with defendants Liebert, Guerrero and Miller. (FAC at 12).[10]

On November 1, 2000, defendant Anoufrieva moved out and left plaintiff a voicemail message stating that she had decided to end the marriage. (FAC at 13).

## B. Stanford Police Reports/Investigation

On November 1, 2000—the same date defendant Anoufrieva left plaintiff—defendant Cox reported to the Stanford Police Chief that plaintiff had raped and committed domestic violence against Anoufrieva. (FAC at 13). Defendant Cox persuaded the Chief to initiate a criminal investigation against plaintiff. (FAC at 13). On the same date, defendants Cox, Liebert and Guerrero, acting on behalf of the Cox Firm, contacted another Stanford Police officer and stated that plaintiff had committed domestic violence and spousal rape against Anoufrieva and had threatened to kill her and dispose of her body. (FAC at 14). On November 2, 2000, defendants Anoufrieva and Liebert went to the police station to file a crime report (the "Stanford Police Report").[11] (FAC at 14). Defendant Liebert made a litany of false accusations against plaintiff. (FAC at 14).

On November 6, 2000, the Stanford Police telephonically contacted plaintiff and told him that he was being investigated for domestic violence and spousal rape. (FAC at 14). Between November 1, 2000 and January 18, 2001, the Stanford Police investigated defendants' allegations against plaintiff. (FAC at 16). The police concluded that there was no evidence and no charges were filed. (FAC at 16).

---

**9.** As the First Amended Complaint is quite lengthy, this court provides a somewhat abbreviated recitation of the allegations therein. The court has also reorganized the allegations by subject matter rather than chronology. To the extent additional allegations are necessary to resolve the issues raised by the parties, the court provides additional detail below in the pertinent discussion section.

**10.** Defendant Anoufrieva worked for the Cox Firm until December 31, 2000. (FAC at 12–13, 17). She was a client of the Cox Firm

from November 2000 to at least June 2001 and continued to maintain contact with defendants Cox and Guerrero through at least 2004. (FAC at 13, 20).

**11.** A copy of what has been represented to be the Stanford Police Report is part of Exhibit 1 to the Cox/Liebert Defendants' request for judicial notice filed on December 26, 2007 (Docket No. 29). Plaintiff disputes the authenticity of such document. (Docket No. 40).

## C. The Bankruptcy Case

On November 7, 2000—the day after the Stanford Police advised plaintiff that he was being investigated—plaintiff, who had been experiencing financial hardship due in part to debts incurred by his father who had died the prior year, decided to file for bankruptcy. (FAC at 15). On May 11, 2001, plaintiff voluntarily dismissed the bankruptcy case. (FAC at 22).

## D. The Asylum Case

Between November 2000 and June 2001, defendants prepared and submitted documents, including the Stanford Police Report, to immigration authorities in an effort to demonstrate that Anoufrieva was a victim of domestic violence and to support a claim for asylum (the "Asylum Case"). (FAC at 16).

## E. The Domestic Violence Action and the Annulment Case

On November 9, 2000, defendants Cox, the Cox Firm, Liebert and Anoufrieva initiated a Superior Court action ("the Domestic Violence Action") against plaintiff, alleged that plaintiff had terrorized, raped and tortured Anoufrieva over a 15–month period, and obtained a domestic violence prevention restraining order against him. (FAC at 15).[12] The next day plaintiff was served with the restraining order and hired an attorney. (FAC at 15). On December 1, 2000, the judge in the Domestic Violence Action concluded that there was no evidence that plaintiff had committed domestic violence or rape and that plaintiff did not owe Anoufrieva any money or support payments. (FAC at 17).

On December 18, 2000, plaintiff filed a Superior Court action to annul his marriage to defendant Anoufrieva based upon fraud. (FAC at 18).

On February 1, 2001, plaintiff and defendant Anoufrieva (through a non-defendant lawyer), agreed in writing to settle the annulment action on the following terms: (i) the restraining order would be vacated; (ii) the parties would sign mutual general releases for all civil and criminal claims accrued as of that date; (iii) a judgment of dissolution would be entered; (iv) neither party would receive any alimony or property from the other; and (v) the parties would make full disclosure to one another. (FAC at 20). The restraining order was vacated on February 1, 2001. (FAC at 17).

## F. Other Alleged Harassment

Between November 1, 2000 and November 10, 2000, defendant Liebert covertly entered plaintiff's apartment without plaintiff's permission, removed plaintiff's personal files, including files containing correspondence between plaintiff and a former girlfriend, and provided the files to the Stanford Police. (FAC at 16).

Between December 2000 and January 2001, defendants Cox, the Cox Firm, Anoufrieva and Liebert employed "dirty tricks" to harass and intimidate plaintiff. (FAC at 18). Among other things, defendants: (i) fraudulently filed three change of address forms (in defendant Liebert's handwriting and billed by the Cox Firm to defendant Anoufrieva) so that plaintiff's mail would be sent to the Cox Firm; (ii)

---

12. Copies of documents which are represented to have been filed in the Domestic Violence Action, including the restraining order against plaintiff, are attached as Exhibits 2–7 and 9–11 of the Cox/Liebert Defendants' request for judicial notice filed on December 26, 2007. (Docket No. 29). Plaintiff has affirmatively expressed his non-opposition to the court taking judicial notice of Exhibit 3. (Docket No. 40). Plaintiff objects to the authenticity of Exhibits 2 and 4. (Docket No. 40). Plaintiff has offered commentary regarding, but has not otherwise objected to Exhibits 5–7, and 9–11. (Docket No. 40).

contacted the Stanford University Dean to make negative statements about plaintiff and to pressure the Dean to evict plaintiff from his campus apartment; (iii) contacted plaintiff's creditors to obtain private information about plaintiff; (iv) contacted a federal prosecutor to request that plaintiff be charged with social security and bankruptcy fraud; and (v) contacted and persuaded plaintiff's bankruptcy trustee to threaten plaintiff with criminal prosecution if he did not dismiss the bankruptcy. (FAC at 19).

### G. Menlo Park Police Report/Investigation and Resulting Prosecution

On January 2, 2001, defendants the Cox Firm, Guerrero, and Miller and another non-defendant Cox Firm employee, filed a false report with the Menlo Park Police alleging that plaintiff had violated the restraining order. (FAC at 19).[13] Defendants' false police report led to a criminal prosecution of plaintiff that lasted for six and a half years. (FAC at 19).

Defendants the Cox Firm, Guerrero and Liebert also submitted the Stanford Police Report to the Menlo Park Police, who in turn, attached it to their own report and provided it to the prosecutor. (FAC at 16, 20).

On January 4, 2001, defendant Anoufrieva filed a false supplemental report with the Menlo Park Police in which she stated that she had quit her job due to her extreme fear of plaintiff. (FAC at 20).[14]

On February 14, 2001, at the offices of the Cox Firm, defendant Guerrero and Miller identified plaintiff's photo in a photospread. (FAC at 21).[15] Between February 14, 2001 and June 6, 2007, defendants pursued a criminal prosecution of plaintiff by providing the Menlo Park Police and the prosecutor with photographs of plaintiff and his car and documents that presented plaintiff in a false light. (FAC at 21). Defendants' refusal to recant their false statements to the police led to plaintiff's arrest and false imprisonment on a warrant and criminal complaint issued on March 7, 2001. (FAC at 21).[16] Between March 7, 2001 and June 6, 2007, defendants continued to prosecute the criminal action against plaintiff. (FAC at 21).

In the interim—in April 2001, plaintiff felt compelled to leave California due to defendants' campaign of harassment and intimidation and the resulting anguish and humiliation plaintiff suffered. (FAC at 22). Over six years later, in September 2006, plaintiff returned to California. (FAC at 23). In November 2006, as a result of a criminal background check performed pursuant to a job application, plaintiff first learned that he was charged in the foregoing criminal proceeding. (FAC at 23). On April 30, 2007, plaintiff appeared in court in the criminal proceeding, was

---

13. A copy of what has been represented to be the January 2, 2001 Menlo Police Report is part of Exhibit 12 to the Cox/Liebert Defendants' request for judicial notice filed on December 26, 2007. (Docket No. 29). Plaintiff objects to the authenticity of Exhibit 12. (Docket No. 40).

14. A copy of what has been represented to be the January 4, 2001 Menlo Police Report Supplement is part of Exhibit 12 to the Cox/Liebert Defendants' request for judicial notice filed on December 26, 2007. (Docket No. 29). Plaintiff objects to the authenticity of Exhibit 12. (Docket No. 40).

15. Copies of the photospreads and reports regarding the referenced identifications are part of Exhibit 12 to the Cox/Liebert Defendants' request for judicial notice filed on December 26, 2007. (Docket No. 29). Plaintiff objects to the authenticity of Exhibit 12. (Docket No. 40).

16. A copy of the criminal complaint is part of Exhibit 12 to the Cox/Liebert Defendants' request for judicial notice filed on December 26, 2007. (Docket No. 29). Plaintiff objects to the authenticity of Exhibit 12. (Docket No. 40).

taken into custody, and had conditions imposed upon his liberty by the court. (FAC at 23). Plaintiff, for the first time, viewed the Menlo Park Police report which revealed the roles of defendants Guerrero, Liebert, Cox, and the Cox firm in instigating the criminal proceeding against him. (FAC at 23–24).

On June 6, 2007, the criminal proceeding was terminated in plaintiff's favor. (FAC at 24).

### H. Post–Prosecution Events

Beginning on June 6, 2007, plaintiff attempted to contact Debra Cox to determine whether she was the representative of the Cox Estate and to speak with her regarding his intent to file the instant federal lawsuit. (FAC at 24–25). Debra Cox was verbally abusive and accused plaintiff of threatening her. (FAC at 25). On June 22, 2007, a caller who identified himself as a police officer addressed plaintiff in an intimidating tone, told plaintiff that plaintiff had made terrorist threats to Ms. Cox, and advised plaintiff that the officer would file a crime report against plaintiff, and that plaintiff would be prosecuted. (FAC at 25–26).

On September 1, 2007, defendant Anoufrieva left plaintiff a voicemail message, threatening to have plaintiff shot if he did not desist from suing her and defendant Guerrero. (FAC at 27). On October 19, 2007, plaintiff received a voicemail message from a male caller who identified himself as an inspector from Menlo Park, said he was calling on behalf of defendant Anoufrieva, and threatened to have plaintiff arrested and prosecuted if he did not immediately drop his lawsuit. (FAC at 27–28). On October 28, 2007, plaintiff's elderly frail mother advised plaintiff that she had received a call from a Menlo Park inspector who demanded that plaintiff drop his lawsuit and who threatened to harass her if plaintiff did not do so. (FAC at 29).

In November and December 2007, plaintiff received numerous phone calls from the same man who identified himself as defendant Anoufrieva's boyfriend. (FAC at 29). During the same time frame, defendant Anoufrieva was arrested on felony charges of making a terrorist threat and violating a court order, pleaded guilty, and was imprisoned through December 31, 2007. (FAC at 29).

### III. MOTIONS TO DISMISS

#### A. Standards Governing Motions to Dismiss

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to contain a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendants fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly ("Twombly")*, 550 U.S. 544, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (citations omitted). While a complaint need not include detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Twombly*, 127 S.Ct. at 1964–65 (citations omitted). Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true. *Id.* at 1965. A plaintiff must proffer enough facts to state a claim to relief that is plausible on its face. *Id.* at 1974.

Pursuant to Fed.R.Civ.P. 12(b)(6), a court may dismiss a complaint for failure to state a claim because: (1) the complaint lacks a cognizable legal theory; or (2) the complaint alleges insufficient facts under a cognizable legal theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir.1990). In ruling on a motion to dismiss made pursuant to Rule 12(b)(6),

the court must take as true all factual allegations in a complaint, and must construe the complaint in the light most favorable to the plaintiff. *See Yamaguchi v. United States Department of the Air Force,* 109 F.3d 1475, 1481 (9th Cir.1997). However, the court is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir.2001), *amended in non-pertinent part on denial of rehearing,* 275 F.3d 1187 (2001).

In the case of a *pro se* plaintiff, pleadings are liberally construed to afford him the benefit of any doubt. *See Karim–Panahi v. Los Angeles Police Department,* 839 F.2d 621, 623 (9th Cir.1988). A Rule 12(b)(6) motion should be granted where the plaintiff fails to "nudge [his] claims across the line from conceivable to plausible." *Twombly,* 127 S.Ct. at 1974; *Mitan v. Feeney,* 497 F.Supp.2d 1113, 1124 (C.D.Cal.2007). Where the complaint discloses a fact that necessarily defeats a claim, the court may dismiss on that basis as well. *Franklin v. Murphy,* 745 F.2d 1221, 1228–29 (9th Cir.1984).

"When a motion to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Jablon v. Dean Witter & Co.,* 614 F.2d 677, 682 (9th Cir.1980) (citation omitted). Motions to dismiss cannot be granted "if the factual and legal issues are not sufficiently clear to permit [the court] to determine with certainty whether the doctrine [of equitable tolling] could be successfully invoked." *Supermail Cargo, Inc. v. United States,* 68 F.3d 1204, 1207 (9th Cir.1995).

"In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the Complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." *See Schneider v. California Department of Corrections,* 151 F.3d 1194, 1197 n. 1 (9th Cir.1998) (emphasis in original; citations omitted). The court may, however, consider documents properly submitted as part of the complaint or upon which the complaint necessarily relies, if the authenticity of such documents is not contested. *Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir.2001) (citations omitted). A court is not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint. *Mitan,* 497 F.Supp.2d at 1124 (citing *Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1295–96 (9th Cir.1998)). A court may also consider judicially noticed matters of public record. *Lee,* 250 F.3d at 689; *Emrich v. Touche Ross & Co.,* 846 F.2d 1190, 1198 (9th Cir.1988) (court may take judicial notice of matters of public record without converting motion to dismiss into one for summary judgment); *Schweitzer v. Scott,* 469 F.Supp. 1017, 1020 (C.D.Cal.1979) (court may take judicial notice of court files and records) (citing Fed. R.Evid. 201); *Tekle v. United States,* 2002 WL 1988178 *3 (C.D.Cal.2002) (court may take judicial notice of prior complaint with exhibits) (citing Fed.R.Evid. 201(b)), *aff'd,* 58 Fed.Appx. 768 (9th Cir.2003). However, a court may not take judicial notice of a *fact* that is subject to "reasonable dispute" simply because it is contained within a pleading that has been filed as a public record or is asserted in another document which otherwise is properly the subject of judicial notice. *See Lee,* 250 F.3d at 689–90.[17]

---

**17.** Applying the foregoing principles to the parties' judicial notice requests submitted in connection with the Motion to Dismiss and the Anoufrieva Motion, the court grants in part and denies in part such requests. Such

If the court finds that a complaint has failed to state a claim, dismissal may be with or without leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1126–30 (9th Cir. 2000) (en banc). A court may consider factual allegations outside of the complaint in determining whether to grant leave to amend. *See Broam v. Bogan*, 320 F.3d 1023, 1026 n. 2 (9th Cir.2003). Dismissal without leave to amend is proper only in "extraordinary" circumstances. *Id.* at 1028 (9th Cir.2003) (citation and internal quotation omitted). A *pro se* complaint may not be dismissed without leave to amend unless "it is absolutely clear that the deficiencies of the Complaint could not be cured by amendment." *Karim–Panahi*, 839 F.2d at 623 (citations and internal quotations omitted); *see also Lopez*, 203 F.3d at 1130 (court should not dismiss *pro se* complaint without leave to amend "unless it determines that the pleading could not possibly be cured by the allegation of other facts") (citation and internal quotations omitted). A court may also dismiss a complaint without leave to amend when amendment would be futile. *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1099 (9th Cir.2004).

## B. Discussion

In the Motion to Dismiss, the moving defendants argue, albeit in a different order that: (i) all claims, except claims seven through nine and eleven, fail to state claims and/or are improper and should be dismissed;[18] (ii) claim eleven—the prima facie tort claim—is not cognizable and should be dismissed; (iii) claim fourteen—the civil conspiracy claim—and all portions of plaintiff's other claims which are predicated upon an alleged conspiracy, should be dismissed, *inter alia*, because California Civil Code § 1714.10 prohibits the filing of claims against an attorney predicated upon a conspiracy between the attorney and his/her client; and (iv) all claims, except claims three, eleven and fourteen, are time-barred and should be dismissed. Defendant Anoufrieva also seeks dismissal of the First Amended Complaint based upon the statute of limitations.[19] The court initially addresses defendants' non-statute of limitations contentions. The parties' stat-

requests are granted to the extent they ask the court to take judicial notice of (i) pleadings filed in this action; (ii) pleadings filed in other actions which have been filed or lodged in this action; (iii) the fact that a party made representations, as opposed to the truth of the representations made, in the foregoing pleadings; and (iv) documents filed or lodged in this action upon which the Original Complaint and First Amended Complaint necessarily rely, if such reliance is undisputed and if the authenticity of such documents is not contested. Such requests are denied to the extent they ask the court to take judicial notice of (i) pleadings in other courts which have not been filed or lodged in this action; (ii) the truth of representations made in pleadings which have been judicially noticed; and (iii) documents upon which the Original Complaint and First Amended Complaint may necessarily rely, if the authenticity of such documents is contested or if there is a factual issue as to whether such documents are docu-

ments upon which such pleadings necessarily rely (*e.g.*, the December 22, 2000 letter attached as Exhibit 8 to the Cox/Liebert Defendants' request for judicial notice filed on December 26, 2007 (Docket No. 29)).

18. Although defendants' notice of motion also asserts that claims eight and nine fail to state claims and/or are improper and should be dismissed, defendants do not so argue in the Motion to Dismiss. Accordingly, this court does not consider whether claims eight and nine should be dismissed on such bases.

19. Although the Anoufrieva Motion does not specify the claims as to which dismissal is sought, in light of the reference in the caption to the "motion to dismiss the case," the court liberally construes such motion to seek dismissal of all claims in which defendant Anoufrieva is named as a defendant, i.e., claims one, two, four, five, six, seven, eight, nine, eleven, thirteen, and fourteen.

ute of limitations arguments are then addressed, the extent necessary, in a separate section below.

## 1. Claim One: RICO—Against All Defendants [20]

■ The elements of a RICO claim are: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's 'business or property,'" *Living Designs, Inc. v. E.I. Dupont de Nemours and Co.*, 431 F.3d 353, 361 (9th Cir.2005), *cert. denied,* 547 U.S. 1192, 126 S.Ct. 2861, 165 L.Ed.2d 895 (2006) (citations omitted). For purposes of RICO, "racketeering activity" means: (1) "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical ... which is chargeable under State law and punishable by imprisonment for more than one year"; and (2) any act which is indictable under a number of specified federal criminal statutes. *See* 18 U.S.C. § 1961(1). A "pattern of racketeering activity" requires at least two predicate acts of racketeering activity, the last of which occurred within ten years after the commission of a prior act of racketeering activity. 18 U.S.C. § 1961(5).

Plaintiff's RICO claim is predicated on alleged violations of federal statutes prohibiting witness tampering (18 U.S.C. §§ 1512(b)-(d)),[21] presentation of false documents to immigration authorities (18 U.S.C. § 1546(a)),[22] immigration document fraud (8 U.S.C. § 1324c(a)(1)),[23] and mail

---

**20.** As indicated in note 2, *supra,* claim one alleges violations of 18 U.S.C. §§ 1962(a), (b), (c), and (d). Each listed subsection prohibits somewhat different conduct. Subsection (a), in pertinent part, makes it unlawful for any person who has received income derived from a pattern of racketeering activity to use or invest such income or the proceeds thereof, in the operation of an enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. 18 U.S.C. § 1962(a). Subsection (b), in pertinent part, makes it unlawful for any person through a pattern of racketeering activity to acquire or maintain any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. 18 U.S.C. § 1962(a). Subsection (c), in pertinent part, makes it unlawful for any person employed by or associated with an enterprise engaged in, or the activities of which affect interstate or foreign commerce, to conduct or participate in the conduct of such enterprise's affairs through a pattern of racketeering activity. 18 U.S.C. § 1962(a). Subsection (d) makes it unlawful for any person to conspire to violate subsections (a), (b), or (c). Any person injured in his business or property by reason of a violation of Section 1962 may sue therefor. 18 U.S.C. § 1964(c).

**21.** Plaintiff alleges that defendants violated 18 U.S.C. § 1512(b)-(d) by (1) preventing plaintiff from (a) acting as his own attorney in the domestic violence, annulment and bankruptcy cases; (b) obtaining discovery in such cases; (c) obtaining an annulment of his marriage from Anoufrieva; (d) pursuing a petition for bankruptcy; and (e) filing the instant action until August 14, 2007; and (2) intimidating plaintiff through (a) the Cox Estate's June 22, 2007 extortionate threat; (b) Anoufrieva's September 1, 2007 death threat; (c) Anoufrieva's October 19, 2007 threat to charge plaintiff with bogus crimes; and (d) Anoufrieva's stalking which culminated in her felony conviction on December 31, 2007. (FAC at 33–34).

**22.** Plaintiff alleges that defendants violated 18 U.S.C. § 1546(a) by presenting to immigration authorities, on behalf of defendant Anoufrieva and in support of her asylum application, documents and petitions which contain false statements and which fail to contain any reasonable basis in fact or law. (FAC at 34).

**23.** Plaintiff alleges that defendants violated 8 U.S.C. § 1324c(a)(1) by preparing an application or document with knowledge or in reckless disregard of the fact that the application or document contained a false, fictitious or fraudulent statement or had no basis in fact or law. (FAC at 34).

fraud (18 U.S.C. § 1341).[24] (FAC at 33–36).[25]

Defendants allege, albeit in a different order, that the RICO claim should be dismissed because plaintiff (i) fails to plead the elements of the claim with adequate particularity; (ii) fails to allege activity lasting a period of time sufficient to constitute a "pattern of racketeering activity"; and (iii) lacks standing to pursue the claim.[26] For the reasons stated below, this court recommends that plaintiff's RICO claim be dismissed with leave to amend.[27]

### a. Adequacy and Particularity of Pleading Elements

Defendants contend that plaintiff's RICO claim should be dismissed because it is not pleaded with the particularity required by Fed.R.Civ.P. 9(b) in that it offers no details regarding "the who, what, where, why, when and how of the RICO allegations." (Motion to Dismiss at 27). Plaintiff responds that the allegations are sufficiently specific. (Opposition to Motion to Dismiss at 20).

 Cases in which RICO claims are predicated upon fraud, must conform to the particularized pleading requirements of Fed.R.Civ.P. 9(b), i.e., they must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation. *See Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065–66 (9th Cir.2004). However, RICO claims not predicated

---

**24.** Plaintiff alleges that defendants violated 18 U.S.C. § 1341 by engaging in two schemes. First, plaintiff alleges that defendants devised and executed a scheme which had the purposes of (1) depriving plaintiff of his constitutional rights to file suit, to defend himself in proceedings filed and initiated by defendants, and to be secure in his personal papers; (2) depriving plaintiff of his mail; (3) invading his privacy; and (4) harassing and intimidating plaintiff. Such scheme allegedly involved executing and filing three "USPS forwarding orders for Plaintiff's personal mail boxes" which caused plaintiff's mail to be diverted to the Cox Firm where defendants Anoufrieva and Liebert opened, read, copied, and discarded plaintiff's mail. (FAC at 34–35). Second, plaintiff alleges that defendants devised and executed a scheme which had the purpose of (1) concealing from plaintiff the existence of the criminal investigation and proceeding which had been initiated by defendant on January 2, 2001 and which culminated in the filing of a criminal complaint against plaintiff on March 7, 2001; (2) inducing plaintiff to drop his claim for an annulment from Anoufrieva based on fraudulent marriage; (3) inducing plaintiff to agree to vacate a restraining order entered against Anoufrieva; and (4) inducing plaintiff to execute a mutual general release in favor of Anoufrieva. In furtherance of such scheme, on January 26, 2001, defendant Anoufrieva allegedly sent to plaintiff, via United States mail, documents purporting to resolve all civil and criminal litigation pertaining to the restraining order in the Domestic Violence Action. (FAC at 35–36).

**25.** Acts which are indictable under Title 18, United States Code, sections 1341, 1512, and 1546 constitute "racketeering activity." 18 U.S.C. § 1961(1)(B). Although not addressed by the parties, it is not clear to the court that an act indictable under 8 U.S.C. § 1324c(a)(1) constitutes "racketeering activity." *See* 18 U.S.C. § 1961(1)(F) (racketeering activity includes any act which is indictable under the Immigration and Nationality Act, section 274 (relating to bringing in and harboring certain aliens), section 277 (relating to aiding or assisting certain aliens to enter the United States), or section 278 (relating to importation of alien for immoral purpose) if the act indictable under such section of such Act was committed for the purpose of financial gain).

**26.** The court lists and addresses such arguments in the order referenced above. Defendants raise the foregoing arguments in a different order.

**27.** Although it is unlikely that plaintiff can properly state a RICO claim in light of the alleged facts, the court nonetheless recommends that plaintiff be granted one final opportunity to amend the claim because it is not absolutely clear that the deficiencies therein could not be cured by amendment.

upon fraud, need not be pleaded with particularity. *See Marks v. City of Seattle,* 2003 WL 23024522 *6 (W.D.Wash.2003) (rejecting defendant's assertion that pleading of non-fraud RICO claims must conform to Fed.R.Civ.P. 9(b)).

In this case, plaintiff's RICO claim, as noted above, is predicated on alleged violations of federal statutes prohibiting witness tampering (18 U.S.C. §§ 1512(b)-(d)), presentation of false documents to immigration authorities (18 U.S.C. § 1546(a)), immigration document fraud (8 U.S.C. § 1324c(a)(1)), and mail fraud (18 U.S.C. § 1341). (FAC at 33–36). As witness tampering is not a fraud predicate, it need not be pleaded with particularity. However, as the remaining three acts are alleged fraud predicates which must be pleaded with particularity, the court proceeds to examine the adequacy of the allegations of such predicate acts.

■ As to the asserted violation of section 1546(a) of Title 18, plaintiff alleges that between November 2000 and June 2001, defendants, acting individually and in concert, prepared and presented to immigration authorities, on behalf of defendant Anoufrieva and in support of her asylum application, documents and petitions (including an INS Form I–751 and the Stanford Police Report) which contain false statements and which fail to contain any reasonable basis in fact or law. (FAC at 16, 34). In order to state a claim under the portion of section 1546(a) implicated by plaintiff's allegations, plaintiff must allege: (1) defendants presented an application, affidavit, or other document required by the immigration laws or regulations; (2) such application, affidavit or document contained a false statement with respect to a material fact or failed to contain any reasonable basis in law or fact; and (3) defendants acted knowingly.[28] *See* 18 U.S.C. § 1546(a). Plaintiff's claim is deficient and lacking in adequate particularity. First, he fails to provide adequate particularity regarding the date(s) on which the document(s) were presented to immigration authorities. Instead, he alleges an eight-month period of November 2000 to June 2001 during which the alleged submission occurred. Second, he fails to allege the particular defendant or defendants who actually submitted documents. Third, he fails to specify all documents upon which his claim is predicated and instead merely notes that the submission includes two specific documents. Fourth, he fails to allege that the specifically referenced documents or other documents in issue were required by the immigration laws or regulations. Finally, to the extent plaintiff's claim is predicated upon the falsity of statements contained in the documents presented, he fails to specify the false statement(s) allegedly contained in such documents or to allege that such statement(s) were material. Accordingly, plaintiff fails adequately to allege a predicate racketeering act based upon a violation of section 1546(a) of Title 18.

■ As to the asserted violation of section 1324c(a)(1) of Title 8, plaintiff alleges that between November 2000 and June 2001, defendants, acting individually and in concert, prepared an application or docu-

---

**28.** The pertinent portion of section 1546(a) of Title 18 provides:

Whoever knowingly makes under oath, or as permitted under penalty of perjury under section 1746 of title 28, United States Code, knowingly subscribes as true, any false statement with respect to a material fact in any application, affidavit, or other docu-

ment required by the immigration laws or regulations prescribed thereunder, or knowingly presents any such application, affidavit, or other document which contains any such false statement or which fails to contain any reasonable basis in law or fact [shall be punished as set forth therein].

18 U.S.C. § 1546(a).

ment (including an INS Form I–751 and the Stanford Police Report) with knowledge or in reckless disregard of the fact that the application or document contains a false, fictitious or fraudulent statement or has no basis in fact or in law. (FAC at 34). The foregoing statute makes it unlawful for any person or entity knowingly to falsely make any document for the purpose of satisfying a requirement of chapter 12 of Title 8 or to obtain a benefit under such chapter. *See* 8 U.S.C. § 1324c(a)(1).[29] The term "falsely make" means to prepare or provide an application or document, with knowledge or in reckless disregard of the fact that the application or document contains a false, fictitious, or fraudulent statement or material representation, or has no basis in law or fact, or otherwise fails to state a fact which is material to the purpose for which it was submitted. *See* 8 U.S.C. § 1324c(f). Assuming a violation of this statute qualifies as a racketeering act (*see supra* note 25), plaintiff fails adequately to allege such a violation for much the same reason that he fails adequately to allege a violation of section 1546(a). First, he fails to provide adequate particularity regarding the date(s) on which the document(s) were presented to immigration authorities. Instead, he alleges an eight-month period of November 2000 to June 2001 during which the alleged submission occurred. (FAC at 16). Second, he fails to allege the particular defendant or defendants who actually submitted documents. Third, he fails to specify all documents allegedly in issue and instead merely notes that the description includes two specific documents. Fourth, to the extent plaintiff's claim is predicated upon the falsity of statements contained in the documents presented, he fails to specify the false statement(s) allegedly contained in such

documents or to allege that such statement(s) were material. Accordingly, plaintiff fails adequately to allege a predicate racketeering act based upon a violation of section 1324c(a)(1).

■■ Finally, to state a claim for the asserted mail fraud, in violation of section 1341 of Title 18, plaintiff must allege that: (1) defendants formed a scheme or artifice to defraud; (2) defendants used or caused the use of the United States mails in furtherance of the scheme; and (3) defendants did so with the specific intent to deceive or defraud. *See Schreiber Distr. Co. v. Serv–Well Furniture Co., Inc.*, 806 F.2d 1393, 1399–1400 (9th Cir.1986). As detailed in note 24, *supra*, plaintiff alleges that defendants violated 18 U.S.C. § 1341 by engaging in two schemes. Plaintiff does not allege, however, that either scheme was a scheme to defraud or that defendants acted with the specific intent to deceive or defraud. Accordingly, in at least the foregoing respects, he fails adequately to allege that defendants committed mail fraud.

As the alleged witness tampering does not by itself constitute a "pattern of racketeering activity" and, as plaintiff has not adequately pleaded any other racketeering acts which, when combined with the alleged witness tampering, would constitute such a pattern, plaintiff's RICO claim should be dismissed.

**b. Pattern of Racketeering Activity**

As noted above, a " 'pattern of racketeering activity' requires at least two acts of racketeering activity . . . the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). "Predicate acts extending over a few weeks or

---

**29.** Title 8, section 1158, which is encompassed within chapter 12 of Title 8, governs

asylum petitions. *See* 8 U.S.C. § 1158.

months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 242, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); *Religious Technology Center v. Wollersheim*, 971 F.2d 364, 367 (9th Cir. 1992) ("A pattern of activity lasting only a few months does not reflect the 'long term criminal conduct' to which RICO was intended to apply"); *See also Howard v. America Online Inc.*, 208 F.3d 741, 750 (9th Cir.2000) ("Activity that lasts only a few months is not sufficiently continuous."); but *see Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1528 (9th Cir.1995) (no "bright line" one year minimum requirement).

Defendants contend that the alleged predicate acts in this case encompassed only the approximately three-month period from November 2000 to January 2001, and that such period of time is insufficient as a matter of law. (Motion to Dismiss at 25–26). Plaintiff alleges that he also incurred injuries in November 2006 (being turned down for employment), between April 30 and June 6, 2007 (imprisonment), on June 22, 2007 (alleged extortionate threat by Debra Cox and the Cox Estate), on September 1, 2007 (alleged death threat by defendant Anoufrieva), and on October 19, 2007 (alleged intimidating threats by defendant Anoufrieva).

The first two events referenced by plaintiff—plaintiff being turned down for employment and plaintiff's imprisonment—do not assist plaintiff in establishing a pattern of racketeering activity as such events are not predicate racketeering acts. The last three events, however, are alleged to constitute racketeering activity, i.e., witness tampering in violation of 18 U.S.C. §§ 1512(b)-(d). *See supra* note 21.

■ The moving defendants suggest that the later acts are not properly the subject of the RICO claim because they were not associated with defendant Anoufrieva beyond early 2001. (Motion to Dismiss at 26).[30] They essentially argue that they .and defendant Anoufrieva were not part of an enterprise after early 2001—to the extent they ever were—and that any alleged activity after that date is not properly a predicate of the RICO claim.[31] As plaintiff notes, the First Amended Complaint alleges that defendant Anoufrieva continued to be associated with the Cox Firm beyond early 2001 through, *inter alia*, her personal relationships with defendants Cox and Guerrero. (FAC at 32). He further alleges that a relationship of privity existed between them to June 2007 by virtue of Anoufrieva's status as an employee of Cox/the Cox Firm from August 2000 through December 2000, her status as a client from November 2000 until at least June 2001, and her "personal relationship" with defendants Cox and Guerrero which continued at least through 2004. (FAC at 12, 13). Plaintiff's foregoing allegations are conclusory and are predicated upon unwarranted deductions of fact and unreasonable inferences. *See Sprewell*, 266 F.3d at 988. As noted above, plaintiff is required to, and has failed to plead with particularity the allegations of the RICO claim to the extent predicated upon fraud. Although plaintiff makes very broad brush allegations of generic activities spanning several months and/or years, no defendant is alleged to have performed a specific act vis-a-vis plaintiff, let alone a specific predi-

---

**30.** The moving defendants assert that they did not employ defendant Anoufrieva beyond December 31, 2000, and did not represent her in the Domestic Violence Action as of January 5, 2001. (Motion to Dismiss at 26).

**31.** The term "enterprise" is defined to encompasses any group of individuals associated in fact. *See* 18 U.S.C. § 1961(4).

cate act between mid-February 2001 and early June 2007. Even affording plaintiff the benefit of any doubt and construing the First Amended Complaint in the light most favorable to him, plaintiff fails to proffer enough facts to make plausible on their face, plaintiff's allegations that the alleged witness tampering in 2006 and 2007 can properly be considered as anything other than discrete acts of the individuals involved therein as opposed to predicate acts of his RICO claim. *See Twombly*, 127 S.Ct. at 1974.

As the First Amended Complaint fails adequately to allege activity lasting a period of time sufficient to constitute a "pattern of racketeering activity," plaintiff's RICO claim should be dismissed on this basis, as well.

### c. Standing

 To have standing, a civil RICO plaintiff must show that his alleged harm qualifies as injury to his business or property and that his harm was "by reason of" the RICO violation. *Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir.), *cert. denied*, — U.S. ——, 129 S.Ct. 458, 172 L.Ed.2d 327 (2008). RICO standing thus requires compensable injury and proximate cause. *Newcal Indus., Inc. v. IKON Office Solution*, 513 F.3d 1038, 1055 (9th Cir.2008), *cert. denied*, — U.S. ——, 129 S.Ct. 2788, 174 L.Ed.2d 290 (2009). An injury is compensable under RICO if it constitutes "harm to a specific business or property interest" and if the alleged business or property interest is cognizable under state law. *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir.2005) (en banc), *cert. denied*, 546 U.S. 1131, 126 S.Ct. 1069, 163 L.Ed.2d 928 (2006). Plaintiff must show a concrete financial loss and must demonstrate that the racketeering activity

proximately caused the loss. *Guerrero v. Gates*, 442 F.3d 697, 707 (9th Cir.2006) (footnote omitted).

Plaintiff alleges in the RICO claim that defendants' "wrongful actions harmed Plaintiff in the following ways": (1) the fraudulent asylum application perpetuated plaintiff's obligation to provide financial support to defendant Anoufrieva based upon plaintiff's prior execution of an affidavit of support; and (2) defendants' submission of false and defamatory information to immigration authorities prejudiced plaintiff's future chances to sponsor other foreigners for entry/residency in the United States. (FAC at 37). Plaintiff further alleges in the RICO claim that defendants' "harassment, intimidation and malicious prosecution of Plaintiff" caused him to: (3) suffer severe emotional distress and humiliation; (4) suffer deprivation of his constitutional rights to file suit, to due process of law, and to security in his personal papers; (5) suffer deprivation of his California constitutional right to privacy; (5) incur legal fees and costs to defend himself and to clear his name; (7) lose income due to being denied employment; (8) lose future income due to the damage to his reputation damaged and his loss of educational opportunities; and (9) suffer 37 days imprisonment.[32] (FAC at 37).

 Defendants contend that plaintiff lacks standing because he has not alleged that he suffered any compensable injury to his business or property directly and proximately caused by defendants. (Motion to Dismiss at 23–25). This court concludes that plaintiff's RICO claim should not be dismissed on this basis because plaintiff adequately alleges that defendants' racketeering activity proximately caused the

---

**32.** Although plaintiff's Opposition to the Motion to Dismiss argues that plaintiff suffered other injuries as well, the court may not consider such allegations, except for the purpose of determining whether to grant leave to amend. *See Schneider*, 151 F.3d at 1197 n. 1; *Broam*, 320 F.3d at 1026 n. 2.

loss of tangible property (*i.e.*, his diverted mail), the expenditure of attorneys fees' and legal expenses in the criminal proceedings resulting from the Menlo Park Police investigation,[33] and the loss of income due to being denied employment.[34]

However, this court agrees with defendants that plaintiff's other allegations of injury are not cognizable under RICO and should be dismissed on this basis as they are insufficiently concrete, and/or constitute or stem from alleged personal injury.

First, the alleged harm to plaintiff arising from the possibility that government authorities may seek to collect sums from him at least in part as a result of defendants' submission of the allegedly fraudulent asylum application, is insufficiently concrete to constitute compensable injury. Plaintiff cites no authority for the proposition that such alleged harm constitutes a harm to a specific business or property interest cognizable under state law.

Second, the alleged interference with plaintiff's asserted right to sponsor future individuals for entry/residency is likewise insufficiently concrete and constitutes, at most, a personal injury not compensable under RICO. Plaintiff again cites no authority for the proposition that such alleged harm constitutes a harm to a specific business or property interest cognizable under state law.

■ Third, plaintiff's alleged emotional distress and humiliation are personal injuries not compensable under RICO. *See Diaz*, 420 F.3d at 899–900, 902 (plaintiff not entitled to recover under RICO based upon allegations of emotional distress).

■ Fourth, plaintiff's alleged deprivation of his constitutional rights to file suit and to due process of law are likewise

---

**33.** Attorneys fees and legal expenses incurred in other proceedings which are proximately caused by a RICO defendant's wrongful conduct may be cognizable injuries under RICO. *See Burger v. Kuimelis*, 325 F.Supp.2d 1026, 1035 (N.D.Cal.2004) (plaintiff may be entitled to recover legal fees incurred in other proceedings as a result of a RICO defendant's wrongful conduct); *Handeen v. Lemaire*, 112 F.3d 1339, 1354 (8th Cir.1997) (prior legal expense qualifies as injury to business or property); *but see Evans v. City of Chicago*, 434 F.3d 916, 931–32 (7th Cir.2006) (attorneys fees incurred in defending against false arrest not considered an injury to business or property under RICO); *Kelley v. Watts*, 2007 WL 3232080 **2, 3 (E.D.Ark.2007) (same). Defendants essentially argue that plaintiff cannot establish that defendants proximately caused plaintiff to incur legal fees to defend himself because the prosecutor's decision to file the criminal complaint constitutes an intervening event which breaks the chain of proximate cause. Although the decision to file a criminal complaint is generally presumed to result from an independent determination by a prosecutor, such presumption is an evidentiary one applicable at the summary judgment stage; it is not a pleading requirement that a plaintiff must overcome in the context of a motion to dismiss. *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir.2002). Accordingly, as plaintiff alleges that defendants proximately caused the prosecution by presenting false evidence, the court cannot, at this juncture, conclude as a matter of law that defendants did not proximately cause plaintiff to incur the legal fees and expenses attendant to defending against such action.

**34.** If proximately caused by a defendant's racketeering activity, a plaintiff's inability to pursue gainful employment while defending himself against, or while incarcerated on, unjust charges and a plaintiff's material diminishment of employment prospects by virtue of an unjust and unconstitutional conviction qualify as injuries to business or property under RICO. *See Guerrero v. Gates*, 442 F.3d 697, 707–08 (9th Cir.2006); *Diaz*, 420 F.3d at 898–900. As plaintiff essentially alleges that he was denied employment because of the pending criminal charges which were proximately caused by plaintiff's provision of false information, the court cannot conclude as a matter of law at this juncture, that defendants did not proximately cause plaintiff to be denied employment. *See supra* note 33.

personal in nature. *See e.g., McCormick v. City of Lawrence,* 325 F.Supp.2d 1191, 1208 (D.Kan.2004) (alleged deprivation of First Amendment rights alone does not constitute kind of injury required to invoke RICO's civil remedies), *aff'd,* 130 Fed. Appx. 987 (10th Cir.2005).

■ Fifth, plaintiff's alleged deprivation of his right to privacy is not compensable under RICO. *Kelley v. Watts,* 2007 WL 3232080 **2, 3 (E.D.Ark.2007) (lost privacy not considered injury to business or property under RICO).

■ Sixth, plaintiff's alleged loss of future income due to having his reputation damaged and losing educational opportunities is not cognizable. To the extent the loss of future income is alleged to be attributed to the damage to plaintiff's reputation, such losses are not compensable under RICO. *See Diaz,* 420 F.3d at 902 (plaintiff cannot recover under RICO for those pecuniary losses that are most properly understood as part of a personal injury claim); *Tal v. Hogan,* 453 F.3d 1244, 1254 (10th Cir.2006) (damage to reputation not considered injury to business or property), *cert. denied,* 549 U.S. 1209, 127 S.Ct. 1334, 167 L.Ed.2d 81 (2007); *Kelley v. Watts,* 2007 WL 3232080 at **2, 3 (damage to reputation/good name does not constitute injury to business or property under RICO). To the extent plaintiff's loss of future income is alleged to be attributed to the loss of educational opportunities, the First Amended Complaint reflects that the latter loss is again attributable to plaintiff's alleged emotional distress and reputational harm, neither of which, as discussed above, are cognizable injuries under RICO.

■ Finally, false imprisonment is not a business or property injury compensable under RICO. *See Diaz,* 420 F.3d at 899–900, 902 (plaintiff not entitled to recover under RICO based upon allegations of false imprisonment).

Accordingly, except for the allegations of injury due to the loss of plaintiff's tangible property (*i.e.,* his diverted mail), the expenditure of attorneys' fees and legal expenses in the criminal proceedings resulting from the Menlo Park Police investigation, and the loss of income due to being denied employment, plaintiff's alleged predicate injuries in his RICO claim are not compensable and should be dismissed on such basis as well as on the other bases discussed above.

### 2. Claim Two: 42 U.S.C. § 1983— Against All Defendants

■ To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the deprivation was committed by a person acting under color of state law. *See West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) (citations omitted).

■ The actions of private individuals and entities not affiliated with state or municipal government generally do not involve action under color of state law. *See Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 156, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978) (although private person may cause deprivation of constitutional right, he may be subjected to liability under Section 1983 only when he does so under color of law, *i.e.,* that he both acted under color of law and that his actions were properly attributable to government); *Associates & Aldrich Co. v. Times Mirror Co.,* 440 F.2d 133, 134 (9th Cir.1971) (violations of certain constitutional rights actionable under federal law only when accomplished by one who is clothed with authority of state and purporting to act thereunder) (citations and internal quotations omitted).

■ A private individual may be liable under Section 1983 if he conspired or entered joint action with a state actor.

*Franklin v. Fox,* 312 F.3d 423, 441 (2002) (citation omitted). Such a conspiracy requires the existence of an agreement or a meeting of minds among the private individual and state agents to violate the plaintiff's constitutional rights. *See Woodrum v. Woodward County,* 866 F.2d 1121, 1126 (9th Cir.1989); *Franklin,* 312 F.3d at 441 (explaining the requirements of a conspiracy claim under Section 1983).

Defendants contend that they did not act under "color of state law," that there is no "state action," and accordingly, that plaintiff's Section 1983 claim fails as a matter of law. This court agrees that plaintiff fails to state a Section 1983 claim because he fails to plead action under color of state law.

■■■ First, the First Amended Complaint alleges that all of the defendants are private individuals/entities and does not allege that any of the defendants are affiliated with the government or state facts giving rise to such an inference. Providing false information to the police does not transform a private individual into a state actor. *See Daniel v. Ferguson,* 839 F.2d 1124, 1130 (5th Cir.1988) ("Police reliance in making an arrest on information given by a private party does not make the private party a state actor."); *Gilbert v. Feld,* 788 F.Supp. 854, 859–60 (E.D.Pa. 1992) (providing district attorney's office with false and misleading information in order to instigate criminal charges against arrestee does not expose private parties to Section 1983 liability).[35]

■■■ Second, plaintiff fails to allege facts from which it can be inferred that any defendant conspired or entered joint action with a state actor. Although plaintiff alleges that defendants "acted with the help of or in concert with state officials" in filing police reports based on false information, and initiating criminal proceedings, plaintiff does not allege that state officials knew that the police reports were based on false information, or facts from which it could be inferred that such state officials conspired with defendants. *See Twombly,* 127 S.Ct. at 1965–66 (claim based upon illicit agreement must allege enough factual matter, taken as true, to suggest that agreement was made); *Arnold v. International Business Machines Corp.,* 637 F.2d 1350, 1357–58 (9th Cir. 1981) (person who merely supplies inaccurate information that leads to arrest is not involved in joint activity with state and thus not liable under Section 1983) (citing *Butler v. Goldblatt Bros., Inc.,* 589 F.2d 323, 327 (7th Cir.1978), *cert. denied,* 444 U.S. 841, 100 S.Ct. 82, 62 L.Ed.2d 53 (1979)). Indeed, plaintiff alleges that defendants withheld the true facts from law enforcement authorities. (FAC at 14, 40–42, 47). Although plaintiff hints at some impropriety due to defendant Cox initially contacting the Stanford Police Chief, before speaking to an officer (FAC at 13–14, 39–40), these allegations are insufficient to give rise to an inference that Cox conspired with the Chief to deprive plaintiff of his constitutional rights. *See Simmons v. Sacramento County Superior Court,* 318 F.3d 1156, 1161 (9th Cir.2003) (conclusory allegations of conspiracy between private attorney and state officer insufficient to support Section 1983 claim); *Schucker v. Rockwood,* 846 F.2d 1202, 1205 (9th Cir. 1988) (conclusory allegations of conspiracy between judge and law firm insufficient to support Section 1983 claim), *cert. denied,* 488 U.S. 995, 109 S.Ct. 561, 102 L.Ed.2d 587 (1988).

---

**35.** Contrary to plaintiff's contention, *Georgia v. McCollum,* 505 U.S. 42, 54, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992), does not suggest that a private attorney (or other private individuals) who act as a "rogue police agency" qualify as state actors. Nor does such case otherwise suggest that defendants' alleged conduct in this case, transforms them into state actors.

As plaintiff's allegations do not implicate action under color of state law, the First Amended Complaint fails to state a Section 1983 claim. Accordingly, claim two should be dismissed with leave to amend.[36]

### 3. Claim Three: 42 U.S.C. § 1985(2)— Against the Cox Estate

 Section 1985(2) contains two clauses that give rise to separate causes of action. The first clause concerns access to federal courts, giving rise to a cause of action where:

> two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified . . .

42 U.S.C. § 1985(2). To state a claim based on the first clause of Section 1985(2), a plaintiff must allege: (1) a conspiracy between two or more persons; (2) to deter a party or witness by force, intimidation or threat, from attending federal court or testifying freely, fully and truthfully in any matter pending therein; (3) which has resulted in injury to the party. *See David v. United States*, 820 F.2d 1038, 1040 (9th Cir.1987). Although a plaintiff need not suffer monetary damages, he must show that the conspiracy hampered the party's ability to present an effective case in federal court. *Rutledge v. Arizona Board of Regents*, 859 F.2d 732, 735 (9th Cir.1988). Moreover, at least one circuit court, sitting en banc, has declined to apply Section 1985(2) to conspiracies entered into with the intent to deter a party from filing a federal lawsuit, as opposed to physically

attending or testifying in such an action. *Kimble v. D.J. McDuffy, Inc.*, 648 F.2d 340, 347–48 (5th Cir.) (en banc), *cert. denied*, 454 U.S. 1110, 102 S.Ct. 687, 70 L.Ed.2d 651 (1981).

 The second clause of Section 1985(2) concerns access to state or territorial courts, giving rise to a cause of action where:

> two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws . . . .

42 U.S.C. § 1985(2). A cognizable claim based on the second clause of Section 1985(2) requires an allegation of class-based, invidiously discriminatory animus. *Portman v. County of Santa Clara*, 995 F.2d 898, 909 (9th Cir.1993); *Bagley v. CMC Real Estate Corp.*, 923 F.2d 758, 763 (9th Cir.1991), *cert. denied*, 502 U.S. 1091, 112 S.Ct. 1161, 117 L.Ed.2d 409 (1992).

Plaintiff's First Amended Complaint purports to allege a conspiracy between the Cox Estate and an officer of the San Francisco Police Department to violate both clauses of Section 1985(2), apparently predicated upon a June 22, 2007 telephone call from the officer to plaintiff, during which the officer allegedly (i) accused plaintiff of making terrorist threats to Ms. Cox; (ii) advised plaintiff that the officer would file a crime report against plaintiff and that plaintiff would be prosecuted; (iii) advised plaintiff that he had no right to call Ms. Cox; (iv) prohibited plaintiff from calling Ms. Cox or serving her with documents; (v) directed plaintiff to obtain any information regarding the Cox Estate from a specific named attorney and law

---

**36.** Although it is unlikely that plaintiff can allege fact sufficient to state a Section 1983, the court nonetheless recommends that plaintiff be granted one final opportunity to amend the claim because it is not absolutely clear that the deficiencies therein could not be cured by amendment.

firm (who were not in fact authorized to represent the Cox Estate); (vi) threatened to arrest plaintiff if he ever again did anything to annoy Ms. Cox or tried to contact her in any way; and (vii) refused to permit plaintiff to respond to the officer's accusations. (FAC at 25–26, ¶¶ 79–83; FAC at 44–45, ¶¶ 153, 154). Plaintiff alleges that the conspiracy lasted from June 22, 2007 to August 13, 2007, deprived him of his right to file a suit and to due process, and resulted in plaintiff suffering economic loss (due to the delay in presenting his legal claims), fear and emotional trauma. (FAC at 45, ¶¶ 156, 157).

First, plaintiff's claim, to the extent based upon the first clause of Section 1985(2) is deficient because plaintiff does not allege that the conspiracy hampered his ability to present an effective case in federal court. Nor does plaintiff allege facts from which it can be inferred that he was so hampered. Indeed, as to plaintiff's allegation that the conspiracy delayed presentation of his federal claims, thereby causing him economic loss, the First Amended Complaint reflects the contrary. The First Amended Complaint alleges that, beginning slightly over a month after such conversation—during the period allegedly encompassed by the conspiracy—

plaintiff actively pursued his lawsuit. (FAC at 26–27; ¶¶ 85–88) (July 23, 2007 demand letter; August 3, 2007 meeting with defendants' counsel; August 3, 2007 service of Complaint on defendants' counsel; August 14, 2007 submission of Complaint to federal court in conjunction with request to proceed in forma pauperis). Accordingly, this court agrees with defendants' contention that plaintiff's third claim should be dismissed because it does not adequately allege that plaintiff was injured by the purported conspiracy.[37] (Motion to Dismiss at 28).

Second, plaintiff's claim, to the extent based upon the second clause of Section 1985(2) is not cognizable because plaintiff does not allege any class-based, invidiously discriminatory animus. Accordingly, this court agrees with defendants' contention that claim three should be dismissed to the extent it is based on an "access to state court" predicate.[38] (Motion to Dismiss at 28).[39]

### 4. Claim Four: Filing a False Police Report—Against All Defendants

■■■ Plaintiff alleges that on five dates between November 1, 2000, and February 14, 2001, defendants filed or caused to be filed false police reports accusing plaintiff of committing criminal acts.[40] (FAC at

37. Further, although the Ninth Circuit has expressly declined to resolve whether a Section 1985(2) claim may be predicated upon a conspiracy to deter plaintiff from filing a federal lawsuit (*see Portman*, 995 F.2d at 910), under the Fifth Circuit's analysis, plaintiff's claim would be deficient on such basis, as well. See *Kimble*, 648 F.2d at 347–48.

38. In any event, plaintiff appears to have abandoned any "access to state court" predicate for his claim. (Opposition to Motion to Dismiss at 9).

39. Although it is unlikely that plaintiff can allege fact sufficient to state a Section 1985, the court nonetheless recommends that plaintiff be granted one final opportunity to amend the claim because it is not absolutely clear

that the deficiencies therein could not be cured by amendment.

40. Plaintiff specifically refers to November 1, 2000 (the date on which defendants Cox, Liebert and Guerrero allegedly telephonically reported to the Stanford Police that plaintiff had committed domestic violence and spousal rape *against defendant Anoufrieva and had* threatened to kill her and dispose of her body), November 2, 2000 (the date on which defendant Anoufrieva and Liebert allegedly *went to the Stanford Police station to file a* written crime report), January 2, 2001 (the date on which defendants Guerrero, Miller and another Cox Firm employee allegedly *filed a report with the Menlo Park Police* alleging that plaintiff had violated the restraining order), January 4, 2001 (the date on

46). Plaintiff's claim is thus predicated on defendants' communications, albeit allegedly false in nature, with the police regarding plaintiff's purported criminal activities. Such state law claim must be dismissed because, under California law, reports to police of suspected criminal activities— even false reports made with malice—are absolutely privileged and may not serve as predicates for tort claims, except the tort of malicious prosecution. *See Ibrahim v. Department of Homeland Security,* 538 F.3d 1250, 1258 (9th Cir.2008) (recognizing that defendants' telephone call to San Francisco police was privileged under state law and could not be the basis for tort liability) (citing *Hagberg v. California Federal Bank FSB,* 32 Cal.4th 350, 364, 7 Cal.Rptr.3d 803, 81 P.3d 244 (2004)).

California Civil Code section 47 provides that certain publications or broadcasts are privileged. The privilege attaches if the statement is made in the proper discharge of an official duty (section 47(a)), or in any legislative, judicial, or other official proceeding authorized by law (section 47(b)), subject to certain exceptions that are not applicable in this case. This "litigation privilege" was discussed in *Hagberg v. California Federal Bank FSB,* 32 Cal.4th 350, 7 Cal.Rptr.3d 803, 81 P.3d 244 (2004). Hagberg, the plaintiff in that case, attempted to cash a check at a bank. Employees of the bank erroneously believed the check was counterfeit and reported the matter to the police. Officers responded to the scene and detained Hagberg for approximately twenty minutes before releasing her. Hagberg sued the bank and various individuals, alleging, *inter alia,* claims for false arrest and false imprisonment. *Id.* at 356–57, 7 Cal.Rptr.3d 803, 81 P.3d 244. The trial court granted the

bank's motion for summary judgment, which was affirmed on appeal. *Id.* at 358, 7 Cal.Rptr.3d 803, 81 P.3d 244. Both courts concluded that the statements to the police by the bank employees were absolutely privileged pursuant section 47(b). The California Supreme Court agreed and explained that the absolute privilege found in section 47(b) bars all tort causes of actions, except for a claim of malicious prosecution:

> [T]he absolute privilege established by section 47(b) serves the important public policy of assuring free access to the courts and other official proceedings. It is intended to assure utmost freedom of communication between citizens and public authorities whose responsibility is to investigate and remedy wrongdoing. We have explained that both the effective administration of justice and the citizen's right of access to the government for redress of grievances would be threatened by permitting tort liability for communication connected with judicial or other official proceedings. Hence, without respect to the good faith or malice of the person who made the statement, or whether the statement ostensibly was made in the interest of justice, courts have applied the privilege to eliminate the threat of liability for communications made during all kinds of truth-seeking proceedings: judicial, quasi-judicial, legislative and other official proceeding.

*Id.* at 360–61, 7 Cal.Rptr.3d 803, 81 P.3d 244 (internal quotation marks and citations omitted). The California Supreme Court concluded that these policies would best be served by applying the absolute privilege in section 47(b) to reports made to the

which defendant Anoufrieva allegedly filed a supplementary report with the Menlo Park Police stating that she had quit her job due to her fear of plaintiff), and February 14, 2001

(the date on which defendants Guerrero and Miller allegedly identified plaintiff in a Menlo Park Police photospread). (FAC at 13–14, 19–21, 46).

police about a possible crime. *Id.* at 364, 7 Cal.Rptr.3d 803, 81 P.3d 244. Although *Hagberg* did not itself involve a discrete tort claim for making a false report to the police, section 47(b) extends to such tort claims as well. *See Chabak v. Monroy*, 154 Cal.App.4th 1502, 65 Cal.Rptr.3d 641 (2007) (expressly applying absolute litigation privilege under section 47(b) to tort claim that defendant made false report to police of child abuse); *see also Action Apartment Ass'n, Inc. v. City of Santa Monica*, 41 Cal.4th 1232, 1246, 63 Cal. Rptr.3d 398, 163 P.3d 89 (2007) (tort liability may not be imposed when a person contacts law enforcement to report suspected criminal activity).

Accordingly, claim four fails as a matter of law and should be dismissed without leave to amend as any amendment would be futile.[41]

### 5. Claim Five: False Imprisonment— Against All Defendants

Construing claim five liberally, plaintiff appears to allege that defendants, by supplying false information to the Stanford Police, the Menlo Park Police, and the Superior Court in the Domestic Violence Case, caused (i) an arrest warrant to be issued for plaintiff on March 7, 2001; and (ii) plaintiff to be falsely arrested and imprisoned (or to have conditions imposed upon his liberty) in April 2007. (FAC at 46–48).

Much like the preceding claim, the instant claim is predicated upon defendants providing information to the police and the court. Accordingly, claim five must be dismissed because, under the California law discussed above, tort claims arising from such reports and filings in judicial actions, are absolutely privileged and may not serve as predicates for tort claims, except the tort of malicious prosecution. *See Hagberg*, 32 Cal.4th 350, 7 Cal.Rptr.3d 803, 81 P.3d 244 (absolute litigation privilege under section 47(b) applies to tort claims of false arrest and false imprisonment predicated upon inaccurate report to police).[42]

Accordingly, plaintiff's claim for false imprisonment fails as a matter of law and should be dismissed without leave to amend as any amendment would be futile.

### 6. Claim Six: Malicious Prosecution— Against All Defendants

To state a claim for malicious prosecution under California law, a plaintiff must allege that the underlying litigation in issue: (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in plaintiff's favor; (2) was brought without probable cause; and (3) was initiated with malice. *Estate of Tucker v. Interscope Records, Inc.*, 515 F.3d 1019, 1030 (9th Cir.), *cert. denied*, — U.S. —, 129 S.Ct. 174, 172 L.Ed.2d 44 (2008) (citation omitted). In addition, the plaintiff must demonstrate resulting damage by way of attorneys' fees incurred in defense, mental distress, and/or injury to reputation or social standing. *Id.* (citation and quotation marks omitted).

Plaintiff's malicious prosecution claim is predicated on two alleged underlying litigations: (1) the Domestic Violence Action; and (2) the Menlo Park Police criminal proceedings and resulting prosecution.

---

**41.** Plaintiff's reliance on *Fenelon v. Superior Court*, 223 Cal.App.3d 1476, 273 Cal.Rptr. 367 (1990) is misplaced as Hagberg abrogated *Fenelon. See Hagberg*, 32 Cal.4th at 366–69, 7 Cal.Rptr.3d 803, 81 P.3d 244.

**42.** Plaintiff's reliance on *Du Lac v. Perma Trans Products, Inc.*, 103 Cal.App.3d 937, 163 Cal.Rptr. 335 (1980) is misplaced as Hagberg disapproved of such case to the extent it is inconsistent with Hagberg. *See Hagberg*, 32 Cal.4th at 375 n. 8, 7 Cal.Rptr.3d 803, 81 P.3d 244.

(FAC at 49–53). As only the Menlo Park Police criminal proceedings and resulting prosecution are in issue with respect to the non-statute of limitations portion of the Motion to Dismiss, the court, in this section, focuses only on the allegations of the First Amended Complaint relating to such proceedings.[43]

 The First Amended Complaint alleges, *inter alia*, that: (1) defendants, acting individually and in concert: (a) filed Menlo Park Police report no. 01–011 on January 2, January 4, and February 14, 2001, alleging that plaintiff violated a domestic violence restraining order; and (b) initiated a criminal proceeding against plaintiff, case SM 311224, resulting in the filing of a criminal complaint on March 4, 2001 for alleged violation of such order; (2) defendants lacked probable cause to file such reports and to initiate such proceeding; (3) defendants' reports and court filings were based upon deliberately false statements, fictitious scenarios and deliberately omitted material and exculpatory facts; (4) defendants acted maliciously or for a purpose other than to bring plaintiff to justice, and demonstrated malice, ill-will and wanton disregard for plaintiff's rights; (5) the proceedings ended in plaintiff's favor; and (6) due to the prosecution and/or defendants' wrongful conduct, plaintiff incurred expenses associated with defending against the proceedings, emotional distress, and humiliation. (FAC at 49–53).

Defendants contend that plaintiff's malicious prosecution claim, to the extent predicated on the Menlo Park Police criminal proceedings and resulting prosecution, should be dismissed because: (1) the moving defendants were not involved in initiating the criminal complaint on defendant Anoufrieva's behalf as the Cox Firm no longer represented Anoufrieva in March 2001 when such complaint was filed; (2) the moving defendants were not involved in initiating the criminal complaint as evidenced by (a) the reference in such complaint to defendant Anoufrieva as the victim; (b) plaintiff's prior allegation that defendant Anoufrieva was prosecuting the criminal complaint (and omission of reference to defendants as doing so); (c) the absence of any reference in the criminal complaint to the Cox Firm and Liebert; and (d) the reference in the criminal complaint to defendants Guerrero and Miller as witnesses, rather than victims; (3) the defendants cannot be held responsible for maliciously initiating a criminal complaint because they had no role in the district attorney's assessment of whether probable cause existed to file the complaint and the prosecutor necessarily must have believed there was probable cause as otherwise, the complaint would not have been filed; and (4) plaintiff has not adequately pleaded the "favorable termination" element because he has not specifically alleged how the matter was terminated. While plaintiff may well be unable to prove his allegations, the court cannot at this juncture conclude based upon defendants' arguments, that plaintiff has failed adequately to state a claim for malicious prosecution.

First, the asserted fact that the Cox Firm no longer represented plaintiff in March 2001 when the criminal complaint was filed does not necessarily eliminate the possibility that the moving defendants were involved in initiating the criminal complaint as plaintiff alleges.

Second, the other facts asserted by defendants likewise do not necessarily eliminate the possibility that the moving defendants were involved in initiating the

---

**43.** Defendants challenge the viability of plaintiff's malicious prosecution claim to the extent predicated on the first proceeding, on statute of limitations grounds, discussed in Part IIIC, below.

criminal complaint as plaintiff alleges.[44] While the stated roles of Anoufrieva, Guerrero and Miller in the criminal complaint and underlying reports, and the omission of reference to certain moving defendants in plaintiff's Original Complaint and the criminal complaint to some degree undercut plaintiff's allegations, they do not necessarily establish that such defendants were not involved in initiating the criminal complaint as plaintiff alleges.

■ Third, while it can be inferred from the prosecutor's determination to file charges that the prosecutor believed there was probable cause, this fact is not dispositive for purposes of a malicious prosecution claim.[45] In the context of a malicious prosecution claim, probable cause is measured based upon the state of a *defendant's* knowledge at the time a lawsuit is initiated and whether, under an objective standard, the facts known to the defendant constitute probable cause. *Estate of Tucker*, 515

F.3d at 1031 (citing *Sheldon Appel Co. v. Albert & Oliker*, 47 Cal.3d 863, 254 Cal. Rptr. 336, 765 P.2d 498 (1989)). If the court accepts as true, as it must for purposes of the resolving the Motion to Dismiss, that defendants knew that the facts they reported to the Menlo Park Police, and on which the resulting prosecution was predicated were untrue, and consequently that there was no probable cause, then plaintiff's malicious prosecution claim cannot be dismissed despite the prosecutor's determination to file the criminal complaint.

Finally, the court rejects defendants' contention that plaintiff's malicious prosecution claim should be dismissed because it inadequately pleads the "favorable termination" element. As noted above, plaintiff alleges that the proceedings in issue ended in plaintiff's favor. While plaintiff will ultimately be required to prove that the criminal proceedings were "favorably terminated" as defined by California's substantive law,[46] the case upon which defendants rely

**44.** As noted above, in considering a motion to dismiss, the court must accept the allegations of the First Amended Complaint as true, although the court may grant dismissal if such pleading discloses a fact that necessarily defeats a claim or is contradicted by documents referenced in such pleading. Here, the facts proffered by defendants, contained in judicially noticeable documents, do not necessarily defeat or contradict plaintiff's malicious prosecution claim. Moreover, the case upon which defendants rely for the proposition that third party witnesses who give statements to the police do not initiate a prosecution and may not be held liable for malicious prosecution, was decided as a factual matter in the context of motions for summary judgment. *See Cedars–Sinai Medical Center v. The Superior Court of Los Angeles County*, 206 Cal. App.3d 414, 417–18, 253 Cal.Rptr. 561 (1988) (Court of Appeal issued writ of mandate directing trial court to vacate denial of two defendants' motions for summary judgment and to grant summary judgment because uncontroverted evidence established that such defendants neither instigated nor were active-

ly instrumental in causing plaintiff's prosecution).

**45.** The case upon which defendants rely in their "probable cause" argument involved a summary judgment motion—a context unlike the one present here, where the court must accept as true the allegations in the First Amended Complaint. *See Williams v. Taylor*, 129 Cal.App.3d 745, 754–55, 181 Cal.Rptr. 423 (1982) (affirming grant of defendants' motion for summary judgment as to malicious prosecution claim because plaintiff presented no evidence raising a triable issue of fact as to whether defendants had sufficient probable cause to seek initiation of criminal charges).

**46.** In the criminal context, if the dismissal or other termination without a complete trial on the merits, is of such a nature as to indicate the innocence of the accused, it is a "favorable termination." *Jaffe v. Stone*, 18 Cal.2d 146, 150, 114 P.2d 335 (1941). If, however, the dismissal is on technical grounds, for procedural reasons, or for any other reason not inconsistent with guilt, it does not satisfy the "favorable termination" requirement. *Id.*

does not suggest that more than an allegation of favorable termination is required at the pleading stage. *See Siebel v. Mittlesteadt,* 41 Cal.4th 735, 741, 62 Cal.Rptr.3d 155, 161 P.3d 527 (2007).

Accordingly, the Motion to Dismiss should be denied to the extent it seeks dismissal of the portion of claim six which is predicated on the criminal complaint arising from the Menlo Park Police investigation.

### 7. Claim Ten: Negligence—Against Defendant Cox, the Cox Estate and the Cox Firm

In claim ten, plaintiff appears to raise a legal malpractice/negligence claim against only defendant Anoufrieva's attorneys based upon acts allegedly undertaken by such attorneys and their employees (including non-lawyer codefendants) in the course of the alleged representation of Anoufrieva. The First Amended Complaint alleges that the named defendants were negligent because they breached their ethical, professional and statutory duties by: (i) filing court documents and initiating legal proceedings against plaintiff based upon false information; (ii) making deliberately false statements to the police; (iii) making deliberately false statements to a United States Attorney; and (iv) using bad faith tactics such as stealing plaintiff's mail and personal files from his home, pressuring the Stanford University Dean to evict him, contacting his creditors, and asking a United States Attorney to charge him for a crime he did not commit. (FAC at 62–65).

■ Under California law, "an attorney may not be sued for negligent representation of a client by an adverse party in an action who claims to have suffered resulting injury from such negligence." *Omega Video Inc. v. Superior Court,* 146 Cal.App.3d 470, 480, 194 Cal.Rptr. 574 (1983). As this is effectively what plaintiff is attempting to do, his negligence claim should be dismissed without leave to amend as any amendment would be futile.

### 8. Claim Eleven: Prima Facie Tort— Against All Defendants

Construing claim eleven liberally, plaintiff appears to allege that defendants are liable based upon a "prima facie tort" for unjustifiably inflicting damage upon plaintiff by: (i) filing the Stanford and Menlo Park Police reports against him; (ii) prosecuting plaintiff in the Domestic Violence Action; (iii) procuring an Order which abridged plaintiff's rights to due process and to act as his own attorney; (iv) refusing to modify the Order on reasonable grounds requested by plaintiff; (v) prosecuting plaintiff criminally based upon an alleged violation of the restraining order; (vi) contacting the Stanford University Dean; (vii) preparing and filing a meritless asylum petition on behalf of defendant Anoufrieva; (viii) contacting plaintiff's creditors; (ix) providing false information to the bankruptcy trustee; (x) writing a letter to the United States Attorney accusing plaintiff of a crime; (xi) tricking plaintiff into signing a mutual release; and (xii) causing plaintiff to forbear filing suit against defendant until August 14, 2007. (FAC at 66–67).

■ Defendants argue that this claim should be dismissed because it does not state a cognizable claim. This court agrees. No authority of which the court is aware, establishes a cause of action for "prima facie tort" either in California or federal courts. *See e.g., City of Angoon v. Hodel,* 836 F.2d 1245, 1248 (9th Cir.1988) (noting New York as the only state to clearly adopt the prima facie tort cause of action; Missouri and Kansas allow either a limited application of the theory or have indicated that the theory might be accepted; and finding that Alaska does not recognize or adopt the theory). Therefore,

claim eleven is not cognizable and should be dismissed without leave to amend as any amendment would be futile.

### 9. Claim Twelve: Business & Professions Code § 6452(b)—Against Defendants Cox, the Cox Firm, and the Cox Estate

California Business & Professions Code Section 6451 makes it unlawful for a paralegal to perform any services for a consumer (a natural person, firm, association, organization, partnership, business trust corporation or public entity) except as performed under the direction and supervision of an attorney, law firm or other entity that employs or contracts with the paralegal. Any consumer injured by a violation of such statute is entitled to file suit. Cal. Bus. & Prof.Code § 6455(a). An attorney who uses the services of a paralegal is liable for any harm caused as a result of the paralegal's negligence, misconduct and other specified activity. Cal. Bus. & Prof. Code § 6452(b).

Plaintiff alleges in claim twelve that defendants Cox, the Cox Firm, and the Cox Estate are liable for the following misconduct of the alleged paralegal codefendants Anoufrieva, Liebert, Guerrero and Miller: (1) filing deliberately false police reports on five dates between November 1, 2000 and February 14, 2001; (2) furnishing false evidence to the Menlo Park Police; (3) withholding exculpatory evidence from the Stanford and Menlo Park Police; (4) pursuing criminal charges against plaintiff in order to gain an advantage in a civil dispute; (5) violating the automatic stay in plaintiff's bankruptcy action; (6) stealing personal papers from plaintiff's residence; (7) diverting and stealing plaintiff's mail; (8) placing plaintiff in a false light with the Stanford University Dean; (9) contacting plaintiff's creditors; (10) participating in a scheme to prepare and submit a false and meritless asylum petition on behalf of Anoufrieva; (11) fraudulently concealing from plaintiff that he was being criminally prosecuted for an alleged violation of a restraining order; and (12) continuing to prosecute a baseless criminal complaint against plaintiff by participating in a photo identification line-up. (FAC at 68–69). Plaintiff alleges that he suffered, *inter alia*, economic, physical and emotional harm as a result of the foregoing conduct. (FAC at 69).

Defendants liken claim twelve to plaintiff's negligence claim and argue that it should be dismissed because plaintiff was not a "consumer" of services offered by the Cox Firm, and therefore has no standing to sue under Cal. Bus. & Prof.Code § 6452(b). Plaintiff responds that he is a "consumer" as defined in Cal. Bus. & Prof. Code § 6451 because he is a "natural person," and that his claim is based on the paralegal defendants' "misconduct" set forth above, which is actionable under Cal. Bus. & Prof.Code § 6452(b).

While plaintiff is correct that liability under Cal. Bus. & Prof.Code § 6452(b) is not limited to negligent acts, this court agrees with defendants that the term "consumer" implicitly refers to one for whom services are provided. Indeed, in Cal. Bus. & Prof.Code § 6451, such term is defined by reference to one for whom a paralegal may lawfully perform services. Thus, in the absence of any legal authority to the contrary, this court finds that a common sense reading of the foregoing statutes is that Cal. Bus. & Prof. Code § 6455(a) affords standing only to those to whom legal/paralegal services are provided, and that such individuals/entities may sue for negligence, as well as misconduct pursuant to. Cal. Bus. & Prof.Code § 6455(a).[47] Accordingly, plaintiff does not

---

**47.** The parties do not cite, and the court has not located any case law which interprets the pertinent statutes.

have standing to sue under Cal. Bus. & Prof.Code § 6452(b) and claim twelve should be dismissed without leave to amend as any amendment would be futile.

### 10. Claim Thirteen: Business & Professions Code § 17200— Against All Defendants

■■■■■ California's Unfair Competition Law ("UCL"), California Business & Professions Code §§ 17200 et seq., prohibits unlawful and unfair business practices. An unfair business practice is one that either offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. *McDonald v. Coldwell Banker*, 543 F.3d 498, 506 (9th Cir.2008) (citation and quotation marks omitted). Section 17200 "borrows" violations of other laws and makes them independently actionable as unfair competitive business practices. *Theme Promotions, Inc. v. News America Marketing FSI*, 546 F.3d 991, 1008 (9th Cir.2008). Virtually any law, federal, state or local, can serve as a predicate for an action under the UCL. *Troyk v. Farmers Group, Inc.*, 168 Cal. App.4th 1337, 86 Cal.Rptr.3d 416, 440–41 (2008). In addition, a practice may be proscribed under section 17200 as "unfair" even if it is not specifically proscribed by some other law. *Id.* While the scope of the conduct covered by the UCL is broad, the remedies are limited. *Id.; Buckland v. Threshold Enterprises, Ltd.*, 155 Cal. App.4th 798, 812, 66 Cal.Rptr.3d 543 (2007). Damages cannot be recovered, and a plaintiff is generally limited to injunctive relief and restitution. *Buckland*, 155 Cal.App.4th 798, 812, 66 Cal.Rptr.3d 543 (2007).

Section 17204 of the California Business & Professions Code affords standing to bring a claim under the UCL to any person who has suffered injury in fact and has lost money or property as a result of the unfair competition. Because the remedies for individuals under the UCL are restricted to injunctive relief and restitution, the import of the requirement is to limit standing to individuals who suffer losses of money or property that are eligible for restitution. *Buckland*, 155 Cal.App.4th 798, 66 Cal.Rptr.3d 543 (emphasis added). At least one court has held that where a plaintiff seeks only injunctive relief, no such showing is required. *See White v. Trans Union, LLC*, 462 F.Supp.2d 1079, (C.D.Cal.2006).

■■■■ Defendants contend that plaintiff's UCL claim is deficient because plaintiff fails to allege that (1) he has been directly injured in fact and lost money or property arising from conduct involving the commercial markets for goods and services; and (2) defendants obtained any money or property from him. This court concludes that plaintiff adequately alleges a UCL claim.

First, in light of the broad scope of alleged wrongful conduct which may be pursued under the UCL, this court cannot find that the laundry list of alleged wrongful conduct contained in plaintiff's UCL claim is not encompassed by such provision even though it is not cast in terms of the "commercial markets for goods and services."

■■■■ Second, plaintiff adequately alleges injury in fact. For purposes of the UCL, a party suffers an injury in fact if he has personally suffered an invasion or injury to a legally protected interest. *Troyk*, 86 Cal.Rptr.3d at 448–49. An injury to a tangible property interest generally satisfies the injury in fact element for standing. *Troyk*, 86 Cal.Rptr.3d at 449–50. Here, plaintiff alleges among other things, that defendants diverted his mail and took property from his apartment. This is sufficient to allege an injury in fact.

Third, plaintiff adequately alleges that he lost, and that defendants acquired from him, property consisting of at least the diverted mail and the items taken from his apartment. As such property would be eligible for restitution, plaintiff has standing to pursue the UCL claim irrespective of the viability of his request for injunctive relief.[48]

### 14. Claim Fourteen: Civil Conspiracy—Against All Defendants

■■■■ Under California law, civil conspiracy is not itself a separate cause of action. *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 510–11, 28 Cal.Rptr.2d 475, 869 P.2d 454 (1994). Rather, it is a theory of vicarious liability under which certain defendants may be held liable for torts committed by others. *Id.* In order to invoke such theory of liability, a plaintiff must allege the formation of the conspiracy (an agreement to commit wrongful acts), the operation of the conspiracy (commission of the wrong acts), and the damage resulting from such acts. *See State ex rel. Metz v. CCC Information Services, Inc.*, 149 Cal.App.4th 402, 419, 57 Cal.Rptr.3d 156 (2007); *People v. Beaumont Inv., Ltd. ("Beaumont")*, 111 Cal. App.4th 102, 137, 3 Cal.Rptr.3d 429 (2003). In addition, participants in a conspiracy also must know that their conduct is wrongful. *Beaumont*, 111 Cal.App.4th at 137, 3 Cal.Rptr.3d 429.

■■■ California "gatekeeper" statutes limit the pleadability of, *inter alia*, certain civil conspiracy claims by requiring court approval before such claims may be filed. One such statute—California Civil Code § Section 1714.10—requires a plaintiff to obtain a court order prior to filing any cause of action against an attorney for a civil conspiracy with his client arising from

any attempt to contest or compromise a claim or dispute, and which is based upon the attorney's representation of the client. *See* Cal. Civ.Code § 1714.10; *Flores v. Emerich & Fike*, 416 F.Supp.2d 885, 909 (E.D.Cal.2006). Failure to obtain such an order is a defense to any action for civil conspiracy filed in violation of such statute. Cal. Civ.Code § 1714.10(b). The prior court order requirement does not, however, apply to a claim against an attorney for a civil conspiracy with his client where the attorney has an independent legal duty to the plaintiff or the attorney's acts go beyond the performance of a professional duty to serve the client and involve a conspiracy to violate a legal duty in furtherance of the attorney's financial gain. Cal. Civ.Code § 1714.10(c); *Evans v. Pillsbury, Madison & Sutro*, 65 Cal.App.4th 599, 605–06, 76 Cal.Rptr.2d 679 (1998). "In furtherance of the attorney's financial gain" means that through the conspiracy, the attorney derived economic advantage over and above monetary compensation received in exchange for professional services actually rendered on behalf of a client. *Berg & Berg Enterprises, LLC v. Sherwood Partners, Inc.*, 131 Cal.App.4th 802, 834–35, 32 Cal.Rptr.3d 325 (2005).

In plaintiff's civil conspiracy claim, he essentially incorporates all of the other allegations of the First Amended Complaint and alleges that defendants conspired to deprive plaintiff of his constitutional rights by (1) violating (a) 18 U.S.C. § 1962 (RICO); (b) 42 U.S.C. § 1983; (c) California Constitution Article 1 § 1 (privacy); (d) California Business & Professions Code § 6452(b); (e) California Business & Professions Code § 17200; (2) filing deliberately false police reports; (3) maliciously prosecuting

---

**48.** In its reply brief, defendants argue for the first time that plaintiff is not entitled to the injunctive relief sought under the UCL. This court declines to consider arguments raised for the first time in a reply brief.

plaintiff for domestic violence, spousal rape and violating a domestic violence prevention restraining order; (4) procuring the false arrest and imprisonment of plaintiff; (5) invading plaintiff's privacy; (6) making statements and writing letters that placed plaintiff in a false light; (7) deliberately inflicting emotional distress upon plaintiff; and (8) pursuing a deliberate and unjustified course of conduct that caused harm to plaintiff. Plaintiff further alleges that defendants willfully participated in the foregoing illegal objectives with the intent to further some purpose of the conspiracy as described in plaintiff's other claims and that as a result, plaintiff was deprived of constitutional rights and suffered economic, physical and emotional damages. (FAC at 78–79).

Moving defendants argue, albeit in a different order, that: (1) plaintiff's civil conspiracy claim (claim fourteen) must be dismissed because conspiracy is not a viable claim under California law; (2) the conspiracy allegations in claims two through nine and eleven must be dismissed because such allegations are not supported by material facts and are conclusory; and (3) claim fourteen, as well as the civil conspiracy allegations contained in claims two through nine and eleven must be dismissed pursuant to California Civil Code Section 1714.10 because plaintiff failed to obtain a court order prior to filing such claim/making such allegations.

First, plaintiff fails to address defendants' contention that civil conspiracy is not a viable claim under California law. As the authority cited by defendants establishes that under California law civil conspiracy does not constitute a separate claim, claim fourteen, as it is presently enumerated as a separate claim, should be dismissed.

Second, plaintiff fails to address defendants' contention that the conspiracy allegations in claims two through nine and eleven must be dismissed because such allegations are not supported by material facts and are conclusory. In light of the court's recommendation to dismiss counts two through five and eleven on the grounds discussed above, and to dismiss the portion of plaintiff's malicious claim (claim six) that is predicated on the Domestic Violence Action on statute of limitations grounds as discussed below, the court need not address whether the conspiracy allegations therein should be dismissed as unsupported and conclusory. As to the remaining portion of claim six (malicious prosecution and conspiracy), and claims seven (violation of state constitutional right of privacy and conspiracy), eight (false light invasion of privacy and conspiracy) and nine (intentional infliction of emotional distress and conspiracy), defendants' conclusory argument regarding the assertedly conclusory and unsupported nature of the allegations of such claims, does not persuade the court that dismissal on such bases is warranted.

Finally, in light of specific material allegations of the First Amended Complaint, which the court must assume to be true for purposes of these proceedings, the court cannot conclude as a matter of law that the conspiracy exclusively arose out of the moving defendants' legal representation of Anoufrieva or that the moving defendants did not owe and violate an independent duty to plaintiff by, *inter alia*, diverting his mail, and taking personal items documents from his apartment.[49]

### C. Statute of Limitations

In the Motion to Dismiss, the moving defendants allege that *all* claims against

---

49. In light of the recommendation above, the court need not address plaintiff's remaining contentions regarding California Civil Code section 1714.10.

deceased defendant Cox and the Cox Estate, and that all claims *except* claim three (Section 1985), a portion of claim six (malicious prosecution to the extent predicated upon the prosecution resulting from the Menlo Park Police investigation), claim eleven (prima facie tort) and claim fourteen (civil conspiracy) are time-barred and should be dismissed as matter of law. (Motion to Dismiss at 2).[50] As the court has already recommended dismissal of claims one (RICO), two (Section 1983), three (Section 1985), four (filing false police report), five (false imprisonment), ten (negligence), eleven (prima facie tort), twelve (Cal. Bus. & Prof.Code § 6452(b)) and fourteen (civil conspiracy) on other bases, the court addresses only whether the statute of limitations bars the remaining claims in issue, i.e., claim six (malicious prosecution), claim seven (constitutional privacy), claim eight (invasion of privacy), claim nine (intentional infliction of emotional distress), and claim thirteen (UCL).

### 1. Applicable Law

#### a. Accrual, Tolling and Estoppel

As a general matter, under California law, a claim "accrues at 'the time when the cause of action is complete with all of its elements.'" *Fox v. Ethicon Endo–Surgery, Inc.*, 35 Cal.4th 797, 806, 27 Cal.Rptr.3d 661, 110 P.3d 914 (2005) (citation omitted).[51] An important exception to the general rule of accrual is the "discovery rule" which "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Id.* at 807, 27 Cal.Rptr.3d 661, 110 P.3d 914 (citation omitted). "A plaintiff has reason to discover a cause of action when he or she 'has reason at least to suspect a factual basis for its elements.'" *Id.* (citation omitted). "The discovery rule only delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action. The discovery rule does not encourage dilatory tactics because plaintiffs are charged with presumptive knowledge of an injury if they have 'information of circumstances to put [them] on inquiry' or if they have 'the opportunity to obtain knowledge from sources open to [their] investigation.'" *Id.* at 807–808, 27 Cal.Rptr.3d 661, 110 P.3d 914 (citations omitted). Therefore, "plaintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation." *Id.* at 808, 27 Cal.Rptr.3d 661, 110 P.3d 914. "In order to adequately allege facts supporting a theory of delayed discovery, the plaintiff must plead that, despite diligent investigation of the circumstances of the injury, he or she could not have reasonably discovered facts supporting the cause of action within the applicable statute of limitations period." *Id.* at 809, 27 Cal.Rptr.3d 661, 110 P.3d 914.

In conspiracy cases, a limitation period begins to run from the time of the last overt act committed in furtherance of the conspiracy. *People v. Zamora*, 18 Cal.3d 538, 548, 134 Cal.Rptr. 784, 557

---

**50.** As indicated in note 19, *supra*, the court construes defendant Anoufrieva's Motion to seek dismissal of all claims against her based upon the statute of limitations (claims one, two, four, five, six, seven, eight, nine, eleven, thirteen, and fourteen). (Anoufrieva Motion at 1). As discussed *infra*, plaintiff's allegations, if accepted as true, would result in defendant Anoufrieva being equitably estopped from asserting a statute of limitations bar as to the claims against her. The factual and legal issues are not sufficiently clear to permit the court at this juncture to determine with certainty whether she should in fact be equitably estopped from doing so. Accordingly, defendant Anoufrieva's Motion should be denied without prejudice.

**51.** State law determines when a cause of action accrues on state law claims. *Norco Construction, Inc. v. King County*, 801 F.2d 1143, 1145 (9th Cir.1986).

P.2d 75 (1976); *State ex rel. Metz v. CCC Information Services, Inc.,* 149 Cal. App.4th 402, 418, 57 Cal.Rptr.3d 156 (2007). For purposes of the statute of limitations, a conspiracy terminates upon the completion of its primary object. *Zamora,* 18 Cal.3d at 554 n. 12, 134 Cal.Rptr. 784, 557 P.2d 75. Acts committed by conspirators subsequent to the completion of the primary object of a conspiracy cannot be deemed to be overt acts in furtherance of that conspiracy. *Zamora,* 18 Cal.3d at 560, 134 Cal.Rptr. 784, 557 P.2d 75; *State ex. rel. Metz,* 149 Cal.App.4th at 419, 57 Cal.Rptr.3d 156.

■■■■■ The continuing violations doctrine creates an equitable exception to the timely filing requirement. *Deirmenjian v. Deutsche Bank, A.G.,* 2006 WL 4749756 **40–41 (C.D.Cal.2006) (quoting and citing *Morgan v. Regents of University of Cal.,* 88 Cal.App.4th 52, 63–64, 105 Cal.Rptr.2d 652 (2000)). The doctrine comes into play when a defendant's unlawful conduct begins before, but continues into, the statutory period. *Id.* (citing *Richards v. CH2M Hill, Inc.,* 26 Cal.4th 798, 823, 111 Cal. Rptr.2d 87, 29 P.3d 175 (2001)). For continuing violations, a statute of limitations does not begin to run until the violation or series of violations ends. *See Green v. Los Angeles County Superintendent of Schools,* 883 F.2d 1472, 1480–81 (9th Cir. 1989). The theory of continuing violations is an equitable doctrine that "prevent[s] a defendant from using its earlier conduct to avoid liability for later illegal conduct of the same sort." *O'Loghlin v. County of Orange,* 229 F.3d 871, 875 (9th Cir.2000). To establish a continuing violation in this context, a plaintiff must show a series of related acts, one or more of which falls within the limitations period. *Green,* 883 F.2d at 1480; *Morgan,* 88 Cal.App.4th at 64, 105 Cal.Rptr.2d 652. A "continuing violation" is occasioned by continual unlawful acts, not by continual ill effects from an original violation. *Ward v. Caulk,* 650 F.2d 1144, 1147 (9th Cir.1981).

California courts apply equitable tolling in carefully considered situations to prevent the unjust technical forfeiture of causes of action, where the defendant would suffer no prejudice. *Lantzy v. Centex Homes,* 31 Cal.4th 363, 370, 2 Cal. Rptr.3d 655, 73 P.3d 517 (2003) (collecting cases in which equitable tolling applied). The California Supreme Court has described equitable tolling as a judge-made doctrine that operates independently of the literal working of the California Code of Civil Procedure to suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness. *Id.*

■■■■■ A defendant's fraud in concealing a cause of action against him will toll the statute of limitations, and that tolling will last as long as the plaintiff's reliance on the misrepresentations is reasonable. *Grisham v. Philip Morris USA, Inc.,* 40 Cal.4th 623, 637, 54 Cal.Rptr.3d 735, 151 P.3d 1151 (2007). A plaintiff alleging fraudulent concealment must establish that his failure to have notice of his claim was the result of the affirmative conduct by the defendant. *Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.,* 858 F.2d 499, 505 (1988), *cert. denied,* 488 U.S. 1010, 109 S.Ct. 795, 102 L.Ed.2d 786 (1989). Unless a defendant has a fiduciary duty to disclose information to the plaintiff, passive concealment is insufficient for a court to grant equitable tolling. *Thorman v. American Seafoods Co.,* 421 F.3d 1090, 1096 (9th Cir.2005); *Rutledge v. Boston Woven Hose & Rubber Co.,* 576 F.2d 248, 250 (9th Cir.1978); *see also Buckland,* 155 Cal.App.4th at 807, 66 Cal.Rptr.3d 543 (to establish fraud through nondisclosure or concealment of facts, it is necessary to show that the defendant was under a legal duty to disclose them). At least to the extent predicated on fraudulent behavior, a plaintiff seeking to toll the

statute of limitations must plead the factual predicate for such a theory. *Wasco Products, Inc. v. Southwall Technologies, Inc.*, 435 F.3d 989, 991 (9th Cir.), *cert. denied*, 549 U.S. 817, 127 S.Ct. 83, 166 L.Ed.2d 30 (2006).

■■■ A defendant may also be estopped from asserting the statute of limitations as a defense to an untimely action under a theory of "equitable estoppel," if his conduct actually and reasonably induced a plaintiff to forbear filing suit within the applicable limitations period. *Lantzy*, 31 Cal.4th at 383–85, 2 Cal.Rptr.3d 655, 73 P.3d 517. A plaintiff must, however, plead facts indicating that the defendant's conduct directly prevented the plaintiff from filing suit on time. *Id.* at 385, 2 Cal.Rptr.3d 655, 73 P.3d 517. A mere denial of liability, rather than a misrepresentation bearing on the necessity of bringing a timely suit, is insufficient to establish an estoppel to assert the statute of limitations. *Id.* at 384 n. 18, 385 n. 20, 2 Cal.Rptr.3d 655, 73 P.3d 517 (citing *Vu v. Prudential Property & Casualty Insurance Co.*, 26 Cal.4th 1142, 1149–53, 113 Cal.Rptr.2d 70, 33 P.3d 487 (2001)). A defendant may be estopped from asserting the statute of limitations against a plaintiff based upon duress imposed for the purpose of delaying the filing of a lawsuit. *Ateeq v. Najor*, 15 Cal.App.4th 1351, 19 Cal.Rptr.2d 320 (1993). (defendant estopped from asserting statute of limitations because there was evidence that he threatened to cause plaintiff's deportation if she took any action to recover sums owed).

### b. Claims Against Decedents

"With limited exceptions, the statute of limitations in [California] Code of Civil Procedure section 366.2 ... governs causes of action against a decedent that existed at the time of death, 'whether accrued or not accrued.'" *Bradley v. Breen*, 73 Cal.App.4th 798, 800, 86 Cal.Rptr.2d 726 (1999) (*quoting* Cal.Civ.Proc.Code § 366.2).[52] Even claims which did not accrue until after a decedent's death are barred by the one year requirement in section 366.2 so long as the wrongful act has occurred. *See Bradley*, 73 Cal. App.4th at 804–05, 86 Cal.Rptr.2d 726 (section 366.2 bars cross-complaint against decedent's estate for equitable indemnity despite ordinary rule that indemnity action does not accrue for statute of limitations purposes until tort defendant pays judgment or settlement for which that defendant is entitled to indemnity); *Estate of Yool*, 151 Cal.App.4th 867, 876–77, 60 Cal. Rptr.3d 526 (2007) (cause of action that is nascent but not complete will survive section 366.2, such that plaintiff's rights may ripen into actual claim after decedent's death—section 366.2 contemplates action that may be brought against person prior to his death; distinguishing *Bradley* on ground that in such case, wrongful act had occurred, and missing element was damages).

■■ The doctrine of equitable estoppel may be applied to toll the limitations period under section 366.2 "when the decedent's representative has induced a claim-

**52.** California Code of Civil Procedure section 366.2 provides in pertinent part:

 (a) If a person against whom an action may be brought on a liability of the person, whether arising in contract, tort, or otherwise, and whether accrued or not accrued, dies before the expiration of the applicable limitations period, and the cause of action survives, an action may be commenced within one year after the date of death, and the limitations period that would have been applicable does not apply.

 (b) The limitations period provided in this section for commencement of an action shall not be tolled or extended for any reason except as provided [in non-applicable enumerated statutes].

ant not to file a suit within the limitations period...." *Id.* at 803, 86 Cal.Rptr.2d 726; *see also Battuello v. Battuello,* 64 Cal. App.4th 842, 847, 75 Cal.Rptr.2d 548 (1998) (equitable estoppel applies in circumstances "in which a party will be estopped from asserting the statute of limitations as a defense to an admittedly untimely action because his conduct has induced another into forbearing suit within the applicable limitations period"). In *Battuello,* equitable estoppel was applied where the defendant convinced the plaintiff, through a settlement agreement, not to file a timely claim against the decedent's estate and then later the defendant repudiated the agreement and claimed section 366.2 barred the plaintiff's claim. 64 Cal. App.4th at 844–846, 848, 75 Cal.Rptr.2d 548.

### 2. Claim Six: Malicious Prosecution/Conspiracy—Domestic Violence Action Predicate [53]

 Defendants seeks dismissal of the portion of plaintiff's malicious prosecu-

tion claim which is predicated on the Domestic Violence Action. Presumably in recognition of the fact that the elements of a malicious prosecution action are complete when a prosecution is concluded, and that a plaintiff then is presumed to have knowledge of his injury therefrom, an action for malicious prosecution accrues at the time of entry of judgment in the underlying action in the trial court. *Stavropoulos v. Superior Court,* 141 Cal.App.4th 190, 197, 45 Cal.Rptr.3d 705 (2006). The First Amended Complaint alleges that the Domestic Violence Action was terminated through a Mutual General Release which was made part of the final judgment on February 1, 2001. (FAC at 9, 21).[54] Malicious prosecution claims have a two year statute of limitations. *Id.;* Cal.Civ.Proc. Code § 335.1. Accordingly, absent equitable tolling or equitable estoppel, the statute of limitations on plaintiff's malicious prosecution claim, to the extent predicated on the Domestic Violence Action, expired in February 2003—several years before plaintiff initiated the instant action.

**53.** Defendants Cox and the Cox Estate also seek dismissal of the portion of claim six which is predicated upon the later criminal prosecution arising from the Menlo Park Police investigation. The court addresses such defendants' claim separately below.

**54.** Plaintiff conclusorily asserts in his opposition to the Motion to Dismiss that defendants' actions "revived the case, which was not terminated until June 6, 2007." (Opposition to Motion to Dismiss at 8, 16). First, to the extent plaintiff intends to suggest that defendants' alleged pursuit of the criminal prosecution against defendant for violating the domestic violence restraining order in the later Menlo Park Police matter alters the termination date of the Domestic Violence Action, he is mistaken on the law. Second, to the extent plaintiff intends to suggest that the prosecutions of the Domestic Violence Action and the criminal complaint arising from the Menlo Park Police investigation constitute a continuing violation extending his accrual date for the malicious prosecution action re-

lating to the Domestic Violence Action, the court likewise rejects such assertion. Defendants' alleged wrongful acts with respect to both portions of the malicious prosecution claim (*i.e.,* the Domestic Violence Action and the Menlo Park Police prosecution) did not extend beyond February 2001. The only reason the latter malicious prosecution claim relative to the Menlo Park Police prosecution accrued in June 2007, is because it was favorably terminated then—not because of any post-February 2001 action on defendants' part. Accordingly, in the absence of directly applicable authority to the contrary, this court does not view the continuing violation doctrine to apply in the unique circumstances presented here. Finally, plaintiff's conspiracy allegations do not extend the accrual date because the asserted object of the conspiracy to maliciously prosecute plaintiff in the Domestic Violence Action was complete no later than the termination of such action in February 2001. Accordingly, no subsequent acts could operate to extend the limitations period on such conspiracy.

Here, plaintiff essentially alleges that he was fraudulently induced to sign the General Mutual Release due to the failure of defendant Anoufrieva and the other defendants with whom she was allegedly in privity, to disclose the alleged fact that they were prosecuting plaintiff criminally based on a false Menlo Park Police report. (FAC at 8–9). He claims that as a result, he dropped his plan to sue defendant Anoufrieva civilly, and ceased his investigation into the acts of wrongdoing which occurred November 1, 2000 through February 1, 2001. He allegedly did not resume his investigation until November 2006 when he learned of the existence of the criminal prosecution, did not discover evidence regarding the involvement of defendants Liebert, Guerrero, Cox, the Cox Estate and the Cox Firm until June 2007, and did not discover evidence of defendant Miller's involvement until November 2007. (FAC 11).

To the extent plaintiff argues that the portion of the malicious prosecution claim predicated on the Domestic Violence Action, did not accrue until a date after February 2001, his claim lacks merit. As noted above, a malicious prosecution action accrues at the time of the final judgment in the underlying litigation in issue—here, February 2001. Although plaintiff may have ceased his investigation into learning all of the details regarding such claim for reasons he contends support equitable estoppel and tolling, this does not alter the fact that the claim accrued at the time of the judgment—February 2001—when plaintiff is presumed to be on at least inquiry notice of the predicates of such claim.

To the extent plaintiff argues that equitable tolling applies based upon fraudulent concealment, his claim also lacks merit. As to defendant Anoufrieva—the only defendant who is alleged to have been a party to the Mutual General Release and who is alleged to have made relevant affirmative misrepresentations to plaintiff—plaintiff does not allege that her conduct prevented plaintiff from having *notice* of his claim against her as required for equitable tolling predicated upon fraudulent concealment. Plaintiff also fails to establish entitlement to equitable tolling on his malicious prosecution claim as to the remaining defendants. Although plaintiff alleges that such defendants were in privity with defendant Anoufrieva when she made the foregoing alleged affirmative misrepresentations, this court is not required to accept as true, and does not accept as true such a conclusory and otherwise factually unsupported allegation. *See Sprewell,* 266 F.3d at 988.[55] Stripped of plaintiff's conclusory privity allegations, the First Amended Complaint, in relevant part, alleges nothing more than that the remaining defendants—who are not themselves alleged to have been parties to the release, or even to have been the lawyer who represented Anoufrieva in reaching the agreement to settle (FAC at 20–21)—passively concealed that they were pursuing criminal charges against plaintiff through the Menlo Park Police. As the authorities above suggest, absent a fiduciary duty to disclose information to plaintiff—a duty not present here—passive concealment is insufficient for a court to grant equitable tolling.

Finally, to the extent plaintiff alleges that defendants should be equitably estopped from asserting the statute of limitations, the court finds that defendant has adequately alleged facts, which if true,

---

**55.** Even if defendant Anoufrieva's alleged misrepresentations are somehow attributed to the other defendants, the result would be the same because defendant Anoufrieva is not alleged to have represented that any of the other defendants would refrain from pursuing future litigation against plaintiff.

would equitably estop defendant Anoufrieva, but not the other defendants, from asserting the statute of limitations. According to the First Amended Complaint, defendant Anoufrieva represented in the General Mutual Release that she would not pursue criminal charges against plaintiff, and plaintiff refrained from pursuing civil litigation against her based upon such representation until he learned the truth in late 2006. These facts, if true, are sufficient to equitably estop Anoufrieva from asserting a statute of limitations defense on, among other things, the malicious prosecution claim. However, for the same reasons discussed above in connection with equitable tolling and fraudulent concealment, the facts alleged in the First Amended Complaint are insufficient to equitably estop the remaining defendants from asserting a statute of limitations defense on the portion of the malicious prosecution claim that is predicated on the Domestic Violence Action.[56]

Accordingly, defendant Anoufrieva's Motion should be denied to the extent she seeks dismissal of plaintiff's malicious prosecution claim, and the remaining defendants' Motion to Dismiss should be granted to the extent it seeks dismissal of the portion of plaintiff's malicious prosecution claim which is predicated on the Domestic Violence Action.

### 3. Claim Seven: Constitutional Right to Privacy/Conspiracy

Claim seven is predicated upon the alleged theft, diversion, and destruction of plaintiff's mail, the alleged theft from plaintiff's apartment and provision to the Stanford Police of a private file, the alleged making of false defamatory statements about plaintiff to the Stanford University Dean, and the alleged making of requests to plaintiff's creditors for details regarding plaintiff's finances. (FAC at 53–56). A one-year statute of limitations applies to claims related to a violation of the California Constitutional right to privacy. *Cain v. State Farm Mut. Auto. Ins. Co.*, 62 Cal.App.3d 310, 313, 132 Cal.Rptr. 860 (1976); Cal.Civ.Proc.Code § 340.

Defendants argue that this claim accrued no later than December 22, 2000 based upon (i) an allegation in the Original Complaint that on such date, plaintiff wrote a letter to Defendants Cox and the Cox Firm demanding that they cease and desist from harassing him and invading his privacy, and advising that he intended to take legal action to protect his rights; and (ii) the contents of a December 22, 2000 letter which defendants contend, and plaintiff disputes, constitutes the letter referenced in the Original Complaint.[57] Defendants contend that the foregoing al-

**56.** Nor does plaintiff adequately allege facts to support his contention that defendants should be equitably estopped from asserting the statute of limitations against plaintiff based upon duress.

**57.** Copies of the December 22, 2000 letter which defendants represent is the letter referenced in the Original Complaint are attached as Exhibit 8 to the Cox/Liebert Defendants' request for judicial notice filed on December 26, 2007 (Docket No. 29) and as Exhibit 2 to the Declaration of Zach Wadle (Docket No. 97). Prior to filing the First Amended Complaint, plaintiff objected to the court taking judicial notice of such document (as sought by defendants in Docket No. 29) because the letter was not a public record. (Docket No. 40 at 4–5). Plaintiff then requested that such letter be stricken unless re-submitted as part of a sworn declaration. (Docket No. 40 at 6–7). Plaintiff did not, however, suggest that the letter was not the same letter referenced in the Original Complaint. (Docket No. 40). Plaintiff thereafter filed the First Amended Complaint which omitted reference to such letter. In plaintiff's Opposition to the Motion to Dismiss the First Amended Complaint, he now asserts that the December 22, 2000 letter referenced in the Original Complaint is not the same document attached as Exhibit 8 to the Cox/Liebert Defendants' request for judicial notice. (Opposition to Motion to Dismiss at 8, 12, 13–14).

legations and letter establish that plaintiff discovered or had reason to discover, *inter alia,* his instant privacy claim against defendants no later than December 22, 2000.

First, as indicated in note 17, *supra,* this court takes judicial notice of the fact of plaintiff's admission in the Original Complaint but declines to take judicial notice of the proffered letter itself, in light of the factual dispute as to whether it is the letter to which the Original Complaint refers and thus upon which it necessarily relies.

Second, this court cannot recommend granting defendants' Motions to Dismiss claim seven (except as to defendant Cox and the Cox Estate discussed below) because the facts at this juncture are not sufficiently clear to permit the court to determine with certainty when plaintiff discovered, or had reason to discover, the predicates for such claim. As noted above, claim seven alleges that plaintiff's right to privacy was violating by multiple discrete acts. Plaintiff's allegation in the Original Complaint regarding the December 22, 2000 demand that Cox and the Cox Estate cease and desist from harassing him and invading his privacy is too general and broad for the court to be able to ascertain whether plaintiff then knew or had reason to discover that (i) his mail had been stolen, diverted and destroyed; (ii) his personal file had been taken from his apartment; (iii) statements had been made about him to the Stanford University Dean; and/or (iv) requests had been made to plaintiff's creditors for details regarding plaintiff's finances.[58]

Accordingly, the Motion to Dismiss should be denied without prejudice to the extent it seeks dismissal of claim seven based upon the statute of limitations (except as to defendant Cox and the Cox Estate discussed below).

### 4. Claim Eight: False Light Invasion of Privacy/Conspiracy

■■■ Claim eight is essentially predicated upon the same facts as claim seven. (FAC at 56).[59] A one-year statute of limitation applies to claims for false light invasion of privacy. *Cain,* 62 Cal.App.3d at 313, 132 Cal.Rptr. 860; Cal.Civ.Proc.Code § 340.

The parties arguments regarding such claim are essentially the same as those alleged with respect to claim seven.

For the same reasons discussed above in connection with claim seven, this court recommends that the Motion to Dismiss be denied without prejudice to the extent it seeks dismissal of claim eight based upon the statute of limitations (except as to defendants Cox and the Cox Estate discussed below).

### 5. Claim Nine: Intentional Infliction of Emotional Distress/Conspiracy

Construing claim nine liberally, plaintiff appears to allege that defendants intentionally inflicted emotional distress on plaintiff by engaging in the following conduct: (i) attempting to prosecute plaintiff based on false statements in three cases; (ii) stealing plaintiff's mail and personal files from his home; (iii) pressuring the Stanford University Dean to evict him; (iv) contacting his creditors without justifi-

---

**58.** The court would reach the same conclusion even if it considered the substance of the December 22, 2000 letter proffered by defendants.

**59.** Claim eight also alleges that defendants violated his privacy by writing a letter to the United States Attorney requesting that plain-

tiff be indicted for bankruptcy and social security fraud. (FAC at 57). Although not argued by defendants in the Motion to Dismiss and therefore not part of this court's ruling thereon; the court nonetheless notes that this portion of claim eight is likely barred by the California litigation privilege, California Civil Code section 47 discussed *supra.*

cation; and (v) asking a United States Attorney to indict him for crimes he did not commit. (FAC at 59–62). There is a two year statute of limitations for intentional infliction of emotional distress claims. Cal.Civ.Proc.Code § 335.1.

As with the claims above, this court recommends that defendants' Motion to Dismiss claim nine be denied without prejudice (except in part as to defendant Cox and the Cox Estate discussed below) because the facts at this juncture are not sufficiently clear to permit the court to determine with certainty when plaintiff discovered, or had reason to discover multiple predicates for such claim.[60]

### 6. Claim Thirteen: Business & Professions Code § 17200/Conspiracy

 Claim thirteen essentially incorporates every other alleged violation of statutes and rules in the First Amended Complaint and then some. The statute of limitations for this claim is four years. *Burger v. Kuimelis,* 325 F.Supp.2d 1026, 1045 (N.D.Cal.2004); Cal. Bus. & Prof. Code § 17208. As with the foregoing claims above, this court recommends that defendants' Motion to Dismiss claim thirteen be denied without prejudice (except in part as to defendant Cox and the Cox Estate discussed below) because the facts at this juncture are not sufficiently clear to permit the court to determine with certainty when plaintiff discovered, or had reason to discover, some of the predicates for such claim.

### 7. Remaining Claims Against Defendants Cox and the Cox Estate

It is undisputed that defendant Cox died on February 1, 2004 and that plaintiff filed the Original Complaint in this action on October 22, 2007—more than a year after defendant Cox's death.[61] Based on these facts, defendants argue that all claims against defendants Cox and the Cox Estate are barred by the statute of limitations set out in California Code of Civil Procedure section 366.2. Plaintiff argues that his claims remain viable against defendant Cox and the Cox Estate because (1) section 366.2 does not apply to claims that plaintiff could not have filed while defendant Cox was still alive; and (2) defendants should be equitably estopped from asserting the statute of limitations. In light of the dismissal of many such claims on other bases, this court focuses only on the remaining claims against defendants Cox and the Cox Estate: the portion of claim six which is predicated upon the criminal prosecution arising from the Menlo Park Police investigation, claim seven (California Constitutional right to privacy), claim eight (invasion of privacy), claim nine (intentional infliction of emotional distress), and claim thirteen (Business & Professions Code § 17200).

First, the Motion to Dismiss should be denied to the extent it seeks dismissal of the portion of the malicious prosecution claim predicated upon the criminal complaint arising from the Menlo Park Police

---

**60.** Although not argued by defendants in the Motion to Dismiss and therefore not part of this court's ruling thereon, the court nonetheless notes that the portion of claim nine which is predicated upon a request allegedly made to a United States Attorney is likely barred by the California litigation privilege, California Civil Code section 47 discussed *supra.*

**61.** A copy of defendant Cox's death certificate is attached as Exhibit 13 to the Cox/Liebert Defendants' request for judicial notice filed on December 26, 2007. (Docket No. 29). Plaintiff has affirmatively expressed his non-opposition to the court taking judicial notice of such document. (Docket No. 40). As a court may consider judicially noticed matters of public record, the court takes judicial notice of such document. *Lee,* 250 F.3d at 689.

investigation because such claim could not have been filed while defendant Cox was still alive. *See Estate of Yool*, 151 Cal. App.4th at 876–77, 60 Cal.Rptr.3d 526.

Second, the Motion to Dismiss should be granted without leave to amend as to plaintiff's privacy claims (claims seven and eight) because even though the court cannot definitively determine when such claims accrued, such claims unquestionably could have been filed while defendant Cox was alive. Moreover, for the reasons discussed above in connection with the portion of plaintiff's malicious prosecution claim which is predicated on the Domestic Violence Action, defendants are not equitably estopped from asserting the statute of limitations. Accordingly, claims seven and eight should be dismissed without leave to amend as to defendant Cox and the Cox Estate because any amendment would be futile.

Third, the court recommends that claim nine (intentional infliction of emotional distress), be dismissed without leave to amend as against defendants Cox and the Cox Estate except to the extent such claim is predicated upon the alleged malicious prosecution of plaintiff on the criminal complaint arising from the Menlo Park Police investigation. Such malicious prosecution claim is the only portion of the emotional distress claim which could not have been brought against defendant Cox when he was alive. Once again, for the reasons discussed above in connection with the portion of plaintiff's malicious prosecution claim which is predicated on the Domestic Violence Action, defendants Cox and the Cox Estate are not equitably es-topped from asserting the statute of limitations.

Finally, the court recommends that claim thirteen (Business & Professions Code § 17200) be dismissed as against defendants Cox and the Cox Estate without leave to amend except to the extent such claim is predicated upon (i) the alleged malicious prosecution of plaintiff on the criminal complaint arising from the Menlo Park Police investigation; and (ii) the alleged communications between representatives of the Cox Estate and plaintiff in June 2007. Such predicates appear to be the only portions of such claim which could not have been brought against defendant Cox when he was alive. Further, for the reasons discussed above in connection with the portion of plaintiff's malicious prosecution claim which is predicated on the Domestic Violence Action, defendants Cox and the Cox Estate are not equitably estopped from asserting the statute of limitations.

## IV. ANTI–SLAPP MOTION

The Liebert/Cox Defendants and defendants Guerrero and Miller move to strike claims four through six and eight through thirteen, alleging that they constitute a "Strategic Lawsuit Against Public Participation" ("SLAPP") suit within the meaning of the California Code of Civil Procedure ("CCP") section 425.16 (the "Anti–SLAPP statute").[62] The Anti–SLAPP Motion should be denied without prejudice.

### A. Applicable Law

The Anti–SLAPP statute provides in pertinent part:

---

**62.** Although defendants have not moved to strike plaintiff's federal claims, they request that the court give them an opportunity to supplement the Anti–SLAPP motion if the court itself concludes that such claims are subject to the Anti–SLAPP statute. (Anti–SLAPP Motion at 16 n. 3). This court de-clines plaintiff's invitation *sua sponte* to consider whether plaintiff's federal claims should be stricken. Accordingly, the court need not address plaintiff's contentions regarding the alleged impropriety of the Anti–SLAPP statute being applied to federal claims. (Opposition to Anti–SLAPP Motion at 8–9, 12–13).

(b)(1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

. . .

(c) As used in this section, "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public form in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

CCP § 425.16.

■■■ A court considering a motion to strike under the Anti–SLAPP statute must engage in a two-part inquiry. *Vess v. Ciba–Geigy Corp.,* 317 F.3d 1097, 1110 (9th Cir.2003). First, a defendant must make an initial prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or free speech. *Id.* (citation and internal quotation marks omitted). Second, once the defendant has made a prima facie showing, the burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims. *Vess,* 317 F.3d at 1110 (citation and internal quotation marks omitted). If the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim, the motion to strike must be denied. CCP § 425.16(b)(1).

■■■ The Anti–SLAPP statute cannot be invoked by a defendant whose assertedly protected activity is illegal as a matter of law, and for that reason, not protected by constitutional guarantees of free speech and petition. *Flatley v. Mauro,* 39 Cal.4th 299, 317, 46 Cal.Rptr.3d 606, 139 P.3d 2 (2006); *Miller v. Filter,* 150 Cal.App.4th 652, 660, 58 Cal.Rptr.3d 671 (2007) (citing *Flatley* ).[63] However, under California state law, conduct that would otherwise come within the scope of the Anti–SLAPP statute does not lose its coverage simply because it is *alleged* to have been unlawful or unethical. *Birkner v. Lam,* 156 Cal.App.4th 275, 285, 67 Cal. Rptr.3d 190 (2007) (citations and quotation marks omitted). The question of whether a defendant's underlying conduct was illegal as a matter of law is preliminary, and unrelated to the second prong question of whether the plaintiff has demonstrated a probability of prevailing. *Flatley,* 39 Cal.4th at 320, 46 Cal.Rptr.3d 606, 139 P.3d 2. The assertedly protected speech or petition activity loses protection only if it is established through defendant's concession or by uncontroverted and conclu-

---

**63.** The fact that California Civil Code § 47(b), California's statutory "litigation privilege," may immunize a litigant from tort liability for certain at least arguably illegal communications (*e.g.,* making a false statement to the police), does not render such communications "protected" for purposes of the Anti–SLAPP statute. *Flatley,* 39 Cal.4th at 325, 46 Cal. Rptr.3d 606, 139 P.3d 2.

sive evidence that the conduct is illegal as a matter of law. *Flatley*, 39 Cal.4th at 320, 46 Cal.Rptr.3d 606, 139 P.3d 2; *Salma v. Capon*, 161 Cal.App.4th 1275, 1287, 74 Cal.Rptr.3d 873 (2008) (citation omitted).

■ Anti–SLAPP motions challenge particular causes of action rather than individual allegations or theories supporting a cause of action. *Bulletin Displays, LLC v. Regency Outdoor Advertising, Inc.*, 448 F.Supp.2d 1172, 1180 (C.D.Cal.2006) (citations omitted). Where a complaint contains both SLAPP and non-SLAPP causes of action, the SLAPP claims alone may be stricken. *Id.* (citation omitted). A mixed cause of action is subject to the Anti–SLAPP statute if at least one of the underlying acts is protected conduct, unless the allegations of protected conduct are merely incidental to the unprotected activity. *Salma*, 161 Cal.App.4th at 1287–88, 74 Cal.Rptr.3d 873 (plaintiff cannot frustrate purposes of Anti–SLAPP statute through pleading tactic of combining allegations of protected and nonprotected activity under label of one cause of action).

■ Defendants sued in federal courts can bring anti-SLAPP motions to strike state law claims. *Verizon Delaware, Inc. v. Covad Communications Co.*, 377 F.3d 1081, 1091 (9th Cir.2004). Special procedural rules apply where an anti-SLAPP motion is brought in federal court. *Bulletin Displays, LLC*, 448 F.Supp.2d at 1180. If a defendant makes an anti-SLAPP motion based on the plaintiff's failure to submit evidence to substantiate its claims, the motion is treated as a motion for summary judgment, and discovery must be developed sufficiently to permit summary judgment under Rule 56. *Id.* (citations, quotation marks, and internal quotation marks omitted). This is because to permit a defendant to invoke the Anti–SLAPP statute to require a plaintiff to present evidence to support his claims before an opportunity for discovery would

directly conflict with Federal Rule of Civil Procedure 56. *Id.* (citation omitted). If an anti-SLAPP motion is based on legal deficiencies in the complaint, a federal court must determine the motion in a manner that complies with the standards set by Federal Rules 8 and 12. *Id.* (citation and quotation marks omitted).

■ "Granting a defendant's anti-SLAPP motion to strike without granting the plaintiff leave to amend would directly collide with Fed.R.Civ.P. 15(a)'s policy favoring liberal amendment." *Verizon Delaware*, 377 F.3d at 1091. If the offending claims remain in the subsequently amended complaint, the anti-SLAPP remedies remain available to defendants. *Id.*

### B. Analysis

The parties dispute, and as a threshold matter, this court must address, whether to apply the standards set forth in Rule 56 or the standards set forth in Rule 12. In light of the foregoing authorities, resolution of this issue turns on whether defendants' Anti–SLAPP Motion is based on legal deficiencies in the First Amended Complaint or on plaintiff's failure to submit evidence to substantiate his claims.

Defendants urge the court to resolve this matter under the standards set forth in Rule 12, because their motion is predicated upon legal deficiencies in the First Amended Complaint—namely the fact that multiple claims therein are predicated on absolutely privileged communications assertedly protected under California's litigation privilege. However, this court may not reach the litigation privilege bar until step two of the analysis. *See supra* note 63. Before proceeding to step two, the court must, at step one, consider whether the conduct in issue is protected. That analysis in turn, depends upon whether plaintiff can establish by uncontroverted or conclusive evidence that such conduct is illegal as a matter of law.

If, as defendants urge, this court adopts the Rule 12(b)(6) standard, then the court must accept as true plaintiff's allegations that defendants' conduct is illegal, *i.e.*, that defendants knowingly made false statements to the police, to prosecutors, to immigration authorities and to courts. In that event, the court's analysis would end at step one because none of the activity in issue would be protected under the Anti–SLAPP statute, and the court would recommend denial of the Anti–SLAPP Motion without prejudice at this juncture.

If, however, the court applies the summary judgment standard of Rule 56, then the court would also have to recommend denial of the Anti–SLAPP Motion without prejudice at this juncture because discovery is not closed.

Accordingly, this court recommends that the Anti–SLAPP Motion be denied without prejudice at this juncture.[64] If defendants deem it appropriate, they may renew their motion after the close of discovery.[65]

## V. MOTIONS FOR SUMMARY JUDGMENT

### A. Pertinent Undisputed Facts

On April 3, 2008, plaintiff filed the First Amended Complaint. He mailed such pleading to defendants Anoufrieva and Guerrero on the same date. On April 30, 2008, defendant Anoufrieva filed the Anoufrieva Motion.[66] On May 5, 2008, defendant Guerrero filed a joinder in the Cox/Liebert Defendants' Motion to Dismiss. The Anoufrieva Motion and the Motion to Dismiss, although addressed in the instant Report and Recommendation, remain pending before the Court.

### B. Pertinent Law

Rule 8(b)(6) of the Federal Rules of Civil Procedure, provides that an allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied. Fed.R.Civ.P. 8(b)(6). A motion to dismiss is not a responsive pleading. *Miles v. Department of Army*, 881 F.2d 777, 781 (9th Cir.1989). Pursuant to Rule 12(a)(4)(A) of the Federal Rules of Civil Procedure, when a motion to dismiss has been filed, a defendant is not required to answer the complaint until ten (10) days after the court rules on the motion. Fed. R.Civ.P. 12(a)(4)(A); *I–Enterprise Co., LLC v. Draper Fisher Jurvetson Management Co. V, LLC*, 2005 WL 3590984 *2 (N.D.Cal.2005).

---

64. The court nonetheless notes that irrespective of the legality of defendants' conduct, at least portions of some of the claims placed in issue by the Anti–SLAPP Motion do not appear to involve activity covered by the California litigation privilege, i.e., the portions which allege that defendants stole plaintiff's mail and personal files from his home, communicated with/pressured the Stanford University Dean, and communicated with his creditors.

65. As (i) the Anti–SLAPP Motion is predicated on the California litigation privilege; (ii) such privilege, as discussed above in Part IIIB, separately affords defendants a basis upon which to seek dismissal of the same or virtually the same claims that are the subject of the Anti–SLAPP Motion; (iii) the procedural differences between the application of the Anti–

SLAPP statute in state court and federal court effectively undercut at least some of the benefits which might inure to defendants if such motion were brought in state court (*e.g.*, resolution at an early stage of the proceedings prior to the close of discovery); and (iv) the likelihood of collecting treble damages if such motion is ultimately granted is small given plaintiff's financial condition, defendants should give due consideration as to whether the renewal of the Anti–SLAPP Motion is appropriate.

66. As indicated in note 5, *supra*, even though such document is captioned as a response to the First Amended Complaint and a Motion to Dismiss the Case, this court has construed it to be a motion to dismiss.

## C. Discussion

■ Plaintiff seeks summary judgment against defendants Anoufrieva and Guerrero based in significant part upon such defendants' alleged failure to address or deny multiple specified allegations of the First Amended Complaint and the asserted consequential admission of such allegations pursuant to Fed.R.Civ.P. 8(b)(6).[67] Plaintiff's Summary Judgment Motions are based upon the mistaken premise that defendants are required to file a responsive pleading while a motion to dismiss is pending. However, as noted above, when, as in this case, defendants have filed motions to dismiss, they are not required to answer the complaint until after the court rules on such motions. Accordingly, no responsive pleading is currently required. Thus, the failure of defendants Anoufrieva and Guerrero to address or deny multiple allegations of the First Amended Complaint may not properly be deemed admissions to such allegations. Absent such deemed admissions, plaintiff fails to demonstrate that he is entitled to summary judgment against defendants Anoufrieva and Guerrero.[68] *See Rivera v. AuthorHouse*, 2008 WL 131046 *12 (N.D.Ind.2008) (denying *pro se* motion for summary judgment based upon defendants' alleged failure to file responsive pleading because defendants had filed motions to dismiss and thus were not required to file an answer until after notice of court action on motion to dismiss).

Accordingly, Plaintiff's Summary Judgment Motions should be denied.[69]

## VI. RECOMMENDATION

IT IS THEREFORE RECOMMENDED that the District Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) denying in part the Motion to Dismiss;[70] (3) granting in part the Motion to Dismiss, in part

---

67. As to defendant Guerrero, plaintiff's motion is predicated in part on nineteen (19) such alleged admissions, including purported admissions of the "facts" that defendant Guerrero committed fraudulent concealment against plaintiff, committed duress against plaintiff, participated in a conspiracy to commit immigration visa fraud which damaged plaintiff, participated in a conspiracy to commit mail fraud against plaintiff, participated in making false statements pertaining to plaintiff to the Stanford Police, and was coerced by other defendants to make false police reports against plaintiff. As to defendant Anoufrieva, plaintiff's motion is predicated entirely on such defendant's alleged failure effectively to deny each and every material allegation of the First Amended Complaint.

68. As it is clear that plaintiff is not entitled to summary judgment without the referenced admissions, the court need not and has not determined whether plaintiff would be entitled to summary judgment if such allegations were deemed admitted.

69. In light of the basis upon which this court recommends denial of Plaintiff's Summary Judgment Motions, the court need not address the parties' remaining contentions or the requests for judicial notice and evidentiary objections submitted in connection with Plaintiff's Summary Judgment Motions as such matters are moot.

70. Specifically, this court recommends that the Motion to Dismiss be denied without prejudice to the extent it seeks dismissal of (1) the portion of claim six (malicious prosecution) which is predicated upon the criminal complaint resulting from the Menlo Park Police investigation; (2) claim seven (California Constitutional right to privacy), except as to defendants Cox and the Cox Estate; (3) claim eight (invasion of privacy), except as to defendants Cox and the Cox Estate; (4) claim nine (intentional infliction of emotional distress), except to the extent it is against defendant Cox and the Cox Estate *and* is predicated on the alleged malicious prosecution of plaintiff on the criminal complaint arising from the Menlo Park Police investigation; and (5) claim thirteen (Business & Professions Code § 17200), except to the extent it is against defendant Cox and the Cox Estate *and* is predicated on the alleged malicious prosecution of plaintiff on the criminal complaint arising from the Menlo Park Police investiga-

**1112**

with leave to amend, in part without leave to amend;[71] (4) denying the Anoufrieva Motion without prejudice; (5) denying the Anti–SLAPP Motion without prejudice; (6) denying Plaintiff's Summary Judgment Motions; (7) ordering plaintiff to file any Second Amended Complaint within twenty (20) days of the Court's Order Adopting this Report and Recommendation;[72] and (8) advising plaintiff that the failure timely to file a Second Amended Complaint will result in this action proceeding solely on the remaining portions of the First Amended Complaint absent further order of the court.

DATED: December 29, 2008

tion and the alleged communications between plaintiff and the Cox Estate representatives in June 2007.

71. Specifically, this court recommends that: (1) claim one (RICO) be dismissed with leave to amend; (2) claim two (Section 1983) be dismissed with leave to amend; (3) claim three (Section 1985) be dismissed with leave to amend; (4) claim four (filing false police report) be dismissed without leave to amend; (5) claim five (false imprisonment) be dismissed without leave to amend; (6) the portion of claim six (malicious prosecution) which is predicated upon the Domestic Violence Action be dismissed without leave to amend; (7) claim seven (California Constitutional right to privacy) be dismissed without leave to amend as to defendants Cox and the Cox Estate *only*; (8) claim eight (invasion of privacy) be dismissed as to defendants Cox and the Cox Estate *only*; (9) claim nine (intentional infliction of emotional distress) be dismissed as against defendants Cox and the Cox Estate *only, except* to the extent predicated on the alleged malicious prosecution of plaintiff on the criminal complaint arising from the Menlo Park Police investigation; (10) claim ten (negligence) be dismissed without leave to amend; (11) claim eleven (prima facie tort) be dismissed without leave to amend; (12) claim twelve (Business & Profes-

sions Code § 6452(b)) be dismissed without leave to amend; (13) claim thirteen (Business & Professions Code § 17200) be dismissed without leave to amend as to defendants Cox and the Cox Estate *only, except* to the extent predicated on the alleged malicious prosecution of plaintiff on the criminal complaint arising from the Menlo Park Police investigation and the alleged communications between plaintiff and the Cox Estate representatives in June 2007; and (14) claim fourteen (civil conspiracy) be dismissed without leave to amend as an enumerated count.

72. Any second amended complaint must: (a) be labeled: "Second Amended Complaint;" (b) be complete in and of itself and not refer in any manner to the Original Complaint or the First Amended Complaint; (c) contain a "short and plain" statement of the claim(s) for relief except to the extent fraud allegations are involved in which case particularized pleading is appropriate as discussed above. *See* Fed.R.Civ.P. 8(a), 9(b); (d) make each allegation "simple, concise and direct." Fed. R.Civ.P. 8(d)(1); (e) make allegations in numbered paragraphs, "each limited as far as practicable to a single set of circumstances." Fed.R.Civ.P. 10(b); (f) set forth clearly the sequence of events giving rise to the claim(s) for relief; and (g) not add defendants without leave of court.